278 So.2d 230

**Joe C. THOMAS**

v.

**STATE.**

**I Div. 237.**

Court of Criminal Appeals of Alabama.

May 8, 1973.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

DOMINICK, Circuit Judge.

Defendant appeals from a conviction for rape with a sentence of twenty-five (25) years imprisonment.

I

The State's evidence is to the effect: That around 11 o'clock in the evening of October 10, 1970, the prosecutrix left her home on McKinney Street in Mobile, Alabama, in her automobile to pick up her mother-in-law at Scott Paper Company; she made a wrong turn on U. S. Highway 45 and her car stalled at the foot of a viaduct in Prichard, Alabama, so she started walking toward a Rebel gasoline station a couple of blocks away which was lighted, presumably to get to a telephone; as she proceeded toward that station she had to pass an unlighted Gulf Oil station. She noticed two autos of teen-agers racing around the pumps; she also noticed two black young men standing next to the

David L. Barnett, Mobile, for appellant.

pumps watching, and as she passed them the two started following her; she walked faster, and had passed the Gulf Oil station when they caught up with her and grabbed her, dragged her over by the side of a building and hedge, threw her down and though she struggled and screamed, they overpowered her, tore her clothes off and raped her. The larger (defendant here) raped her while the smaller (later identified as Bill Ferris) held his hand over her mouth and tried to hold her arm; the smaller then raped her, and defendant raped her again; a car with lights on passed and they threw her over in some bushes and ran back down the street; in a state of hysteria, she got up, pulled her clothes around her, and made her way to the Rebel service station; the attendant called the police and she reported to them what had happened and advised that the light was sufficient for her to see her assailants and that she could identify them.

Detective Chester Carlisle of Prichard Police Department participated in, and presumably took charge of, the investigation; the police and the prosecutrix walked back down to the scene of the crime and she pointed out where she was raped; her underwear was found there; then she showed where she was first grabbed. There they found her wallet. She was taken to Prichard Police Headquarters and her mother-in-law and husband were called, who brought her some clothes, and she was then taken to Mobile General Hospital where she was given sedation. She was examined next day (Sunday) by Dr. Hogan.

The State's proof was that while defendant was raping her the second time, the younger (Bill Ferris) several times called defendant "Joe" and urged him to "let's go," and appeared to be excited and frightened.

On the way to Police Headquarters Detective Carlisle and the prosecutrix stopped near the scene of the crime, where they saw several black men standing in a group, none of whom she recognized. However, Carlisle recognized one of them so he stopped, stepped out of the car and talked to one black man about five minutes, then introduced the prosecutrix to him, but she didn't know what the detective had told this man.

On the next day she was in the back of Prichard Police Headquarters courtroom with her mother-in-law, and when two policemen were bringing five or six black men to the front, she pointed defendant out to her mother-in-law and told her "that's the one," though she had not seen him since the night of the rape and had not been shown a photograph of defendant. She had observed defendant closely over a period of some five minutes or more and she had no doubt about defendant being the one who raped her twice and was the aggressor. At the trial she again made an in-court identification of defendant, and was most positive.

Detective Chester Carlisle, after seeing the group of blacks while on his way to Police Headquarters with the prosecutrix, recognized one of them as being an informer who had given him information before on which he made arrests; he stopped and talked with this man telling him what had happened and that one of the two who raped the prosecutrix was called "Joe". From the information this informer gave him that night he went to Joe Thomas's house about 1:30 or 2:00 A. M. (Sunday morning) and arrested defendant and took him to Police Headquarters; at Police Headquarters he combed some debris from defendant's hair, composed of little bits of twigs, leaves and grass and put it in a paper envelope and marked it, then he took the dark pants which defendant wore, as well as the slacks which the prosecutrix was wearing and delivered all to Dr. Grubbs, State Toxicologist, along with some of the dirt from the scene where the rape occurred under the cedar bushes, for examination.

On the next day, Sunday, about 11:00 A. M. Detective Carlisle went to the home of a colored male, 15 year old Bill Ferris, and

arrested him and took him to Police Headquarters.

At the trial which began on May 31, 1971 Dr. Nelson E. Grubbs testified that he examined and compared the dirt from scene of the rape and on knees of the trousers defendant wore, and it was microscopically and chemically the same—the plant material and debris taken from defendant's hair and the material taken from the scene were also similar; the plant material found on the prosecutrix's clothes was found to be similar to that in defendant's hair. The slacks which the prosecutrix had on were examined in crotch on right and left side and there were semen stains.

Dr. Walter Hogan, Special Medical Examiner for Mobile County, examined the prosecutrix next day (Sunday) at Mobile General Hospital and found semen in her vagina; there was no evidence of injury to the genitalia. He testified, "It was my opinion that the lacerations and her general examination exhibited definite evidence of some traumatic experience." She also had some scratches and bruises about her shoulders and other parts of her body.

Numerous witnesses, all members of defendant's family, testified on behalf of defendant and his whereabouts on the night in question, more particularly claiming that defendant was at their home all evening and up until the time he was arrested. The testimony is replete with conflicting statements. Their falsity or not were under settled principles for the petit jury to resolve.

Bill Ferris testified that he was 15 years old and was with defendant on the night in question; he and defendant left a teen-age shop and went down the street to where boys were racing cars at a Gulf Oil service station, and this girl (complaining witness) came up and asked where a phone booth was and they told her one was at the Rebel service station; they followed her and grabbed her, pulled her pants off, and defendant had sex with her, then witness had sex with her; they separated, and witness went to his home. Sunday morning the police came to his house and picked him up; he told police that Joe C. Thomas (defendant) was with him and exactly what had happened; since then he has been in the detention home under custody of juvenile authorities. On cross-examination witness admitted forcibly ravishing the prosecutrix and realized that it was serious offense, but he desired to tell the truth of his own accord, and the police didn't ask him to make the statement. He knew defendant had been picked up and jailed the night before, and after witness made the statement to the police he was locked up and put in the detention home. Witness was at preliminary hearing held following the rape on Saturday night.

Defendant testified in his own behalf and denied his guilt.

Detective Carlisle was cross-examined rather vigorously and in detail about his arrest of defendant without a warrant, but no objection was registered by or for defendant to his testimony or to the arrest and such search as was conducted, namely, the plant materials and debris and dirt from scene of crime, defendant's hair, defendant's trousers and prosecutrix's slacks and underwear, nor to Dr. Grubb's testimony. Defendant's attorney was present at preliminary hearing and the line-up, and no objection was made to any of this evidence at the trial or at the preliminary hearing.

During Assistant District Attorney Clay's closing argument the following occurred:

"Mr. Clay: Thank Goodness, she wasn't injured—not physically. But, of course, the fact that some seven or eight months has gone by and she is still under the care of a doctor for a nervous condition because of this traumatic experience.

"Mr. Coley: I don't recall any testimony of such nature. I don't remember such evidence and I object.

"The Court: Over-ruled."

## II

The first claim of error is that "An in-court identification of a defendant in a criminal case which is sufficiently tainted by a suggestive preliminary hearing identification where the defendant was not represented by counsel is a denial of due process of law."

We are cited to: United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199; Redmon v. State, 47 Ala.App. 421, 255 So.2d 604.

These cases are inapplicable in the present case. First, the attorney for defendant was evidently present at the preliminary hearing and at the line-up. Mr. Coley for defendant cross-examined the prosecutrix—(R. 25):

"Q. When you testified in preliminary hearing, do you remember . . . I don't remember your mentioning the name Joe. You think that you did?

"A. I believe I did. Yes.

"Q. You think that you did when I questioned you?

"A. Yes.

"Q. But your identification of this man when you see him right now is based entirely on those few minutes when you were grabbed, and in this light, taken and raped by the side of this building?

"A. Yes. And then I identified him, too, to my mother-in-law at the preliminary hearing.

"Q. Yes. At the preliminary hearing, you identified him as you have here today. You said, 'That's the man.'

"A. No. I saw him with about five or six other men, black men, walk in. Two policemen were bringing them in to the front of the Courtroom to sit down. I was in the back of the Courtroom, and I said, 'That's the one' to my mother-in-law, and pointed him out to her. And I had not seen him between the period that he raped me and then and no one had told me at that time."

■ Incidentally, the line-up here was not at a critical time as held in United States v. Wade, supra, and Gilbert v. California, supra. No objection was made at the trial as to the line-up or the identification, and no motion was made to exclude the evidence. The line-up was not tainted and the circumstances do not show an unfairly constituted line-up, nor was it shown to have been conducted in such an unnecessarily suggestive manner as to be conducive to irreparable mistaken identification. Even if the line-up were to be thought to be violative of due process, the in-court identification need not be rejected if it is shown to have a source independent of the line-up. We are of the opinion that there was sufficient evidence before the trial court, some already alluded to, to show that the in-court identification by the rape victim had an independent origin, hence, fulfilling the legal requirements. United States v. Wade, supra; Houston v. State, 49 Ala.App. 403, 272 So.2d 610; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; Redmon v. State, 47 Ala.App. 421, 255 So.2d 604.

Had the defendant not been represented by counsel at the preliminary and the line-up held on day following the crime, there still would be no error. In Houston v. State, supra, we said:

"The defendant also argues that error was committed because the defendant did not have counsel at the time of the line-up.

"The United States Supreme Court in the recent case of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, * * *, stated:

" ' . . . it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that ad-

versary judicial proceedings have been initiated against him. * * *'

"The Court held that a routine police investigation prior to the filing of formal charges, preliminary hearing, indictment, information or arraignment, as in this case, is not a formal prosecutorial proceeding, and, therefore, prior cases holding that a defendant is entitled to counsel at any 'critical stage of the prosecution' do not apply." Houston v. State, supra.

### III

The next point raised claiming error is "Remarks by the District Attorney in his argument based on facts not in evidence and designed to prejudice the jury against the defendant is a denial of the defendant's right to a fair and impartial trial based on the evidence." In support of which appellant cites Rowe v. State, 20 Ala.App. 119, 101 So. 91, and Harden v. State, 26 Ala. App. 94, 155 So. 719.

The foregoing cases cited enunciate correct propositions of law for which they are cited, but a reading of the cases indicate clearly that they are inapplicable here.

During Assistant District Attorney Clay's closing argument to the jury the following occurred:

"Mr. Clay: Thank Goodness, she wasn't injured—not physically. But, of course, the fact that some seven or eight months has gone by and she is still under the care of a doctor for a nervous condition because of this traumatic experience. . . . . . .

"Mr. Coley: I don't recall any testimony of such nature. I don't remember such evidence and I object.

"The Court: Overruled."

Defendant's attorney, in his brief, argues that this statement was without the evidence and clearly designed to inflame and prejudice the jury as well as to invoke sympathy for the complaining witness.

Dr. Walter Hogan stated in his testimony the following:

"It was my opinion that the laceration and her general examination exhibited definite evidence of some traumatic experience." (R. 50).

■ This evidence was objected to but the objection was overruled by the Court, and no explanation was requested to be made to the jury. Although it could be held that the trial judge should have sustained the objection and possibly made an explanatory charge to the jury, if it were error, it was harmless error. There was evidence from which the jury could infer that the complaining witness had undergone some traumatic experience. The rest of the argument was innocuous and not of such nature to prejudice or inflame the jury against defendant and create sympathy for the witness.

■ In the case of Bullard v. State, 40 Ala.App. 641, 120 So.2d 580, then Presiding Judge Harwood stated the following:

"Of necessity a wide discretion must be allowed the trial judge in regulating the argument of counsel. Trials are adversary in nature. Vigorous prosecution and defense is to be expected. Neither defense counsel nor the prosecutor should be too closely hampered by niceties of speech if he is to be effective, but should be permitted to say his say in his own style. This of course does not mean that unfair and prejudicial argument is to be condoned for one instant. All argument of counsel is to be measured in the background and atmosphere of courtrooms. And as stated in Arant v. State, 232 Ala. 275, 167 So. 540, 544, 'Such statements are usually valued· by the jury at their true worth * * * and not expected to become factors in the formulation of their verdicts.'"

■ In evaluating alleged prejudicial remarks by the prosecutor in closing argument, no fixed standard can be applied,

**234**

and each case must be judged on its merits. Racine v. State, 290 Ala. 225, 275 So.2d 655.

## IV

■ The final point raised is: "An arrest not based on probable cause can not give rise to a search and any evidence seized from the defendant in such a search cannot be used as evidence against him." Attorney for Appellant cites U. S. Constitution Fourth Amendment; Section 5, Alabama Cons., 1901; Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; and, Carroll v. U. S., 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, in support of his contention that the arrest was not based on probable cause, and that the evidence (dirt from the knees of defendant's pants, dirt from the scene where the rape occurred, and bits of twigs and leaves from defendant's hair) seized from the Appellant in such a search could not be used against him. He also relied heavily on the case of Duncan v. State, 278 Ala. 145, 176 So.2d 840. All of these cases state the law correctly, but none of them even approach applicability to this case. He has taken for granted that the arrest was illegal because it was made without probable cause, therefore, if the arrest in its inception was without probable cause, any search of the defendant would have been an incident to an unlawful arrest. A careful reading of the transcript and study of the evidence fails to support Appellant in this contention. An attempt is made to claim constitutional objections. This Court will not search for constitutional objection on mere general suggestion of unconstitutionality. State v. Dillard, 196 Ala. 539, 72 So. 56; Coatney v. State, 49 Ala.App. 385, 272 So.2d 593.

Detective C. L. Carlisle testified that as he was on the way to Prichard Police Headquarters with the prosecutrix and approximately three blocks from the scene of the crime, he saw a large group of teenagers standing on the street corner, and he asked her if she recognized any of them and was given a negative reply. But he stated that he recognized one of them, stopped, departed the car, talked to the one he recognized, and told him what had happened. He further stated that he had been given information by the same person before and that he has made arrests on information furnished by this informant and had found him to be reliable; and based on the information which he obtained from this informant at that time and approximately 1½ hours later he arrested Joe C. Thomas, the defendant, for rape and this was also after the prosecutrix had given this officer a full description of the two persons who had raped her. Detective Carlisle further testified that about 1:30 or 2:00 on Sunday morning he went to the house of the defendant, which was some three or four blocks from the scene of the crime and was met at the door by Joe C. Thomas' sister, and at the detective's request she called Joe C. Thomas to the door where this detective placed him under arrest for rape and while in the car on the way to the police station advised the defendant of his rights, but defendant made no statement of any kind except to deny that he committed the crime. He further testified that he put jail clothes on defendant and took the green pants that had dirt on the knees; that the defendant had something in his hair like broken twigs and leaves and his hair was completely matted with debris like from a cedar bush, so he combed this debris from the defendant's hair, and all of this material was sent to Dr. Grubbs, the State Toxicologist, along with some of the prosecutrix's clothing, as well as some dirt and debris from the exact place of the crime. (R. 33, 37). This detective, having been furnished the detailed description by the prosecutrix of the two who raped her, and having been given the name of Joe, or Joe C., by her as being the name of one, and after having talked with the informant with whom he had similar prior business, and this serious crime having just been committed, there is not the slightest doubt but that this officer had the necessary information and probable cause sufficient to make this arrest. Judge

Cates, in White v. State, 45 Ala.App. 1, 221 So.2d 117, states the following:

"Code 1940, T. 15, § 154, reads as follows:

" '§ 154. An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence; by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony.'

"The occasion of White's being searched is much like that in Beck v. Ohio, 379 U.S 89, 85 S.Ct. 223, 13 L. Ed.2d 142. There the court said:

" 'There are limits to the permissible scope of a warrantless search incident to a lawful arrest, but we proceed on the premise that, if the arrest itself was lawful, those limits were not exceeded here. See Harris v. United States, 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399]; United States v. Rabinowitz, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653]; cf. Preston v. United States, 376 U.S. 364, [84 S.Ct. 881, 11 L.Ed.2d 777]. The constitutional validity of the search in this case then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v. United States,

338 U.S. 160, 175–176, [69 S.Ct. 1302, 93 L.Ed. 1879]; Henry v. United States, 361 U.S. 98, 102, [80 S.Ct. 168, 4 L.Ed. 2d 134]. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. United States, *supra,* at 176, [69 S.Ct. at 1311].' "

 Appellant's attorney in his brief admits there are no objections in the record regarding the unlawfulness of the arrest, and it is pointed out that unless arrest was so illegal as to be unconstitutional, objection cannot now be made. Also, there was no motion to exclude this evidence, therefore, this question sought to be raised on appeal is not subject to review by this Court. Madison v. State, 32 Ala. App. 617, 28 So.2d 927; Loyd v. State, 279 Ala. 447, 186 So.2d 731.

As a general rule this Court will not review the action of the trial court in admitting evidence unless opposing party makes proper objection at the proper time. Loyd v. State, supra.

 Again, Detective Carlisle certainly had reasonable cause to believe that Joe C. Thomas had committed the felony when he was put under arrest without a warrant. It has been held by our Courts that an officer cannot justify arrest without a warrant on the ground that he has reasonable cause to believe that person arrested has committed a felony, unless the officer has information of facts derived from creditable sources or from persons reasonably presumed to know the facts, which if submitted to Judge or Magistrate having jurisdiction, would require issue of warrant of arrest. Berry v. State, 27 Ala. App. 507, 175 So. 407. The case of Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794, holds that reasonable cause to believe as used in Section 154 of Title 15,

Alabama Code of 1940, is of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably, and without prejudice, to believe the person arrested to be guilty, and officer having such bona fide belief may make arrest without a warrant. The case of Duncan v. State, supra, cites Go Bart-Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374, as holding that there is no formula for determination of reasonableness, and each case is to be decided on its own facts and circumstances. Although defendant made no objection to Detective Carlisle testifying about information furnished to him by the unidentified informant, he vigorously argues in the closing paragraphs of his brief that this information was illegal and insufficient to give the arresting officer probable cause. Hearsay information from an unidentified informer may be the basis for a finding of probable cause provided some of underlying circumstances for informer's conclusion are shown and provided there is basis for determining that information is reliable. From all the facts considered concerning Detective Carlisle's investigation, including the unidentified informer's information, we conclude there was ample probable cause to arrest appellant without a warrant. Payton v. State, 47 Ala.App. 347, 254 So.2d 351; Rennow v. State, 47 Ala. App. 419, 255 So.2d 602; Daniels v. State, 290 Ala. 225, 276 So.2d 441.

■■■ Appellant closes his argument in brief with the contention that the arrest was illegal, therefore, such evidence as obtained by the search of defendant was also illegal. This is generally true, but in this particular case the arrest of defendant meets all the requirements of probable cause. It then follows that the arrest being legal, the evidence obtained through search of defendant is legal. Incidentally, the bit of evidence obtained by search of defendant played a very small and insignificant part in the conviction of this defendant; it merely served as a tiny piece in putting the jigsaw puzzle together.

There was definite identification of defendant by the prosecutrix, there was information by informant, though the information was not revealed by Detective Carlisle nor did defendant's attorney question Detective Carlisle relative to that matter during the trial; and then, there was the testimony of the other who participated in the crime with defendant, Bill Ferris, who definitely identified and testified that defendant committed rape. Too, though there was some effort to discredit Bill Ferris, no objection was ever made to his testimony.

V

We have studied and considered the entire record under Alabama Code 1940, Title 15, Section 389, and from this examination we conclude that error is not made to appear, and the judgment of conviction is due to be affirmed.

The foregoing opinion was prepared by Hon. Aubrey Dominick, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

All the Judges concur.