319 So.2d 729

**Lee SMITH**

v.

**STATE.**

**6 Div. 862.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin Q. Brown, J., Asst. Atty. Gen., Birmingham, for the State.

TYSON, Judge.

The indictment charged the appellant with the robbery of one Vincent Lovetto by unlawfully taking $75.00 in currency, and one thirty-eight caliber Smith and Wesson pistol from his person. The jury found the appellant guilty as charged, and fixed punishment at twenty-five years imprisonment. The trial court then set sentence in accordance with this verdict. Appellant's motion for new trial challenging the weight and sufficiency of the evidence was overruled following a hearing with counsel present.

Vincent Charles Lovetto testified that on February 17, 1973, he was employed at the One-Stop Beverage Store, located at 704 Third Avenue North in Birmingham. He testified that at about 8:30 on that evening he was in the store with his wife, Mary Jo Lovetto, that his son had come by earlier that evening and taken some proceeds to his home for safekeeping. He stated that about 8:30 the appellant, Lee Smith, and one David Dillard, walked into the store and ordered a package of Kool cigarettes and some matches. From the record:

"Q  Who is Mr. Dillard?

"A  Mr. Dillard is one of the people that was involved.

"Q  You mean there was somebody other than Lee Smith present when the incident occurred?

"A  Yes sir.

"Q  Who else was present?

"A  My wife.

"Q  Who is your wife?

"A  Mary Jo Lovetto.

"Q  Who else other than you and your wife and Mr. Smith?

"A  Mr. Dillard.

"Q  Please tell the gentlemen of the jury what happened next after he came in the store?

"A  After he ordered the pack of cigarettes and the two-cent box of matches he throwed fifty-five cents up on the counter. My cigarettes were forty-eight cents and the matches were two cents, so I gave him a nickel back. In the meantime there was a green Chevrolet with a green vinyl top pulled up on the outside, and Lee Smith got out and went around, I've got a gondola in the middle of the store, and he went around and got behind my wife and put a pistol to my wife's head."

Mr. Lovetto further testified that Dillard asked how to open the cash register, and that the appellant told him if he raised up, he was dead, that he would shoot. He testified that the appellant reached into the cash register and began putting the money into a sack. He stated that the two men asked why he had no more money in the store, and he told them that his son had come by earlier and taken the proceeds home. He stated that the two men found a thirty-eight caliber Smith and Wesson pistol near the cash register and took it. They also took $75.00 of U.S. currency from the cash register. He stated that the two men directed him and his wife to lie on their stomachs on the floor, and that they then left the premises. Mr. Lovetto made a positive in-court identification of the appellant, Lee Smith.

On cross-examination, Mr. Lovetto stated that the two men drove up in a green four-door Chevrolet with a vinyl top, that the appellant was wearing a khaki jacket and a wide-brimmed hat. He stated that the men were in the store a little over five minutes.

Mrs. Mary Jo Lovetto testified that she was present at the One-Stop Beverage Store, operated by her husband and herself on the evening of February 17, 1973, when

about 8:30 p. m., the appellant and his companion, David Dillard, entered the store. She testified that she was sitting in the back of the store reading a newspaper, that she was not paying too much attention, but when she looked up, appellant had a gun pointed at her head. She testified he grabbed her by the back of her coat, put the gun to the back of her head, and told her to walk around the counter where the cash register was, near her husband. She stated that the appellant then directed them to lie on the floor, and told them if they lifted up their heads they would be dead. She stated that the two men began putting the money in a paper sack, then asked why there was not more money there. She stated that her husband told them that their son had come by earlier that evening and taken the proceeds home. She stated that the two men then took a pistol, and that the appellant asked Dillard if he had taken her husband's wallet. Mrs. Lovetto made a positive in-court identification of the appellant.

On cross-examination, Mrs. Lovetto testified that she had originally identified the appellant from seven or eight photographs brought by the store for her to view by Sergeant Watkins of the Birmingham Police Department. She stated that the appellant's photograph was in the second set of pictures which was brought out several days after the robbery for her to examine. She further testified that the appellant wore a green Army khaki jacket and a hat with a wide brim.

Mrs. Mary Smith testified that she was the mother of the appellant, Lee Smith, and that her son was seventeen years old on February 17, 1973. She testified that at this time her son had very long, thick hair, that he wore it in that fashion because he had been injured, and had been in the hospital in January.

On cross-examination, Mrs. Smith was asked if she knew a David Dillard, Jr., and she said she did because his parents were friends of hers. She testified that Dillard was a grown man, that her son was a teenager, and other than knowing him, they were not friends, and did not go around together.

Helen G. Watley testified that she was a neighbor of the appellant, and that his reputation in the community, as of February 17, 1973, was good.

David Dillard, Jr., took the stand to testify that he was presently an inmate at Atmore Prison Farm in Atmore, Alabama. He testified that he had been represented by counsel, and entered a plea of guilty to the charge of robbing Mr. and Mrs. Lovetto on the night of February 17, 1973. He testified that he drove a green 1971 automobile to the store that evening, and that he was accompanied by one William Phillips, Jr., who was the owner of the Chevrolet. He stated that he went into the store and asked for some cigarettes, and pointed a gun at Mr. Lovetto. He stated that he also had a pocket knife in his hand, that his companion also had a knife, that they directed the couple to lie on the floor, that they did so, that they then opened the cash register and took the proceeds. He stated that the appellant, Lee Smith, was not with him on this occasion.

On cross-examination, Dillard admitted to a burglary conviction on December 7, 1967, and a robbery conviction on November 8, 1973. He also was asked about being with the appellant, Lee Smith, on February 23, 1973, and he denied being with him at a business located at 5303 First Avenue North at about 7:00 p. m.

Lee Smith, Jr., testified that he was seventeen years of age. He testified that he lived with his mother at 1509 Fourteenth Street Southwest, West End, in Birmingham. He testified that he was not with David Dillard, Jr., and a William Phillips on February 17, 1973, that he had ridden in a green 1971 automobile belonging to William Phillips because Phillips knew his older brothers. He testified that he had been injured in 1973, and that he had been taken to the hospital. He denied, on

cross-examination, being present with David Dillard at the One-Stop Beverage Store on February 17, 1973, and further denied being present with Dillard at about 7:00 p. m. on February 23, 1973, at 5303 First Avenue North in Birmingham. He denied going into the store operated by Mr. and Mrs. Lovetto, or knowing anything about the robbery of this store.

As a rebuttal witness, the State of Alabama was permitted to call one Robert Humphries, who testified that he was present on February 23, 1973, at a Jiffy Stop Store on First Avenue and Third Street, and was buying some items when the appellant and one David Dillard, Jr., came into the store.

The trial court did not permit any details of the event which occurred on February 23, 1973, to be placed in evidence except to permit Mr. Humphries to identify the appellant and his companion, David Dillard, Jr., as being together in the Jiffy Stop Store on this occasion. Mr. Humphries positively identified the appellant as being present at the Jiffy Stop Store on this occasion.

I

■ The appellant first submits that the trial court erred in permitting Mr. Humphries to testify as to the appellant and Dillard being present in the Jiffy Stop Store on February 23, 1974. The court's ruling in this respect in essence is as follows:

"MR. HOWARD: Your Honor are you saying you're gonna permit this man to identify, I mean to testify to all these details?

"THE COURT: I'll just say this, I don't want to go into the details of what happened, just the fact that they were there together and that they came in and did what they said and then I want it stopped there.

"MR. HOWARD: They haven't testified that they did anything at that place.

"THE COURT: The testimony of the defendant is that they weren't together and I told you if the testimony didn't show that they were together it wouldn't come in."

As heretofore mentioned, the appellant and Dillard both had denied being together on February 23, 1973, at the Jiffy Stop Store, or that they in fact knew each other very well. The appellant's mother also testified that they were only "casual acquaintances." In light of this testimony and the fact that the appellant's identity was very much an issue here, the trial court properly permitted this rebuttal testimony. *Worthington v. Gwin,* 119 Ala. 44, 24 So. 739. See also *Hogue v. State,* 54 Ala.App. 682, 312 So.2d 86, and authorities therein cited.

II

■ In the course of the closing argument by the State's attorney, the following occurred:

"MR. JOHNSON: Right now there are a lot of people in Jefferson County and some of them are potential robbers.

"MR. HOWARD: We object to that Judge.

"THE COURT: I don't see the relevance.

"MR. JOHNSON: I'm speaking with reference . . .

"MR. HOWARD: We object to it.

"THE COURT: Overruled.

"MR. HOWARD: We except.

"MR. JOHNSON: They're considering the odds.

"They're considering the odds of what will happen to them if they get caught in a robbery.

"MR. HOWARD: Your Honor please, that is highly improper. He's talking about what he thinks some unknown bunch of people are thinking out here in

the public somewhere, and how we could get that in this case I don't know.

"THE COURT: What other people may be thinking, let's leave that out."

Specifically, the appellant urges reversal because of the statements of the prosecutor, "Right now there are a lot of people in Jefferson County and some of them are potential robbers," and "They're considering the odds of what will happen to them if they get caught in a robbery."

It is apparent that the district attorney was here pointing out matters of evidence and arguing their legitimate inferences. It is only when a statement is of a substantive outside fact, stated as a fact, and which manifestly bears on a material inquiry before the jury that the court should interfere and arrest discussion. *Barnett v. State,* 52 Ala.App. 260, 291 So.2d 353, and authorities therein cited.

As noted by Mr. Justice Harwood, then Harwood, P. J., of the former Court of Appeals, in *Bullard v. State,* 40 Ala.App. 641, 120 So.2d 580, the rule covering the situation presented by this record was stated as follows:

"Of necessity a wide discretion must be allowed the trial judge in regulating the argument of counsel. Trials are adversary in nature. Vigorous prosecution and defense is to be expected. Neither defense counsel nor the prosecutor should be too closely hampered by niceties of speech if he is to be effective, but should be permitted to say his say in his own style. This of course does not mean that unfair and prejudicial argument is to be condoned for one instant. All argument of counsel is to be measured in the background and atmosphere of courtrooms. And as stated in *Arant v. State,* 232 Ala. 275, 167 So. 540, 544, 'Such statements are usually valued by the jury at their true worth * * * and not expected to become factors in the formulation of their verdicts.'"

It therefore follows that the trial court's ruling in the case at bar was correct. *Thomas v. State,* 50 Ala.App. 227, 278 So. 2d 230; *Barnett v. State,* supra.

### III

■ In the trial court's oral charge, we find the following [R. p. 169]:

"Now, good character alone, standing by itself gentlemen, is never enough to create a reasonable doubt of the defendant's guilt. Standing alone it is never enough. But, good character, when proven to your satisfaction, and when taken into consideration with all of the other evidence in the case, it may generate a reasonable doubt as to the defendant's guilt, whereas without proof of good character there would have been no proof or no reasonable doubt."

At the conclusion of the charge, we find this exception [R. p. 171]:

"MR. HOWARD: The defendant would take exception to that portion of the charge where the Court stated that good character may not create reasonable doubt."

The trial court's oral charge is a correct statement of law with respect to the testimony of the good character of the accused. *Garrison v. State,* 217 Ala. 322, 116 So. 705.

### IV

■ There were no other exceptions to the trial court's extensive oral charge, and the trial court then gave one written requested charge. The trial court then denied some twenty-six written requested charges.

We have carefully examined each of these and determined that they were either fully covered by the trial court's oral charge, and the given charge, or were abstract, or not properly predicated on the evidence in the case at bar, or were mis-

leading, or incorrect statements of applicable rules of law, hence, their refusals were proper. Title 7, Section 273, Code of Alabama 1940; *Cannon v. State,* 53 Ala.App. 509, 301 So.2d 272; *Morrow v. State,* 52 Ala.App. 145, 290 So.2d 209, cert. denied 292 Ala. 743, 290 So.2d 213; *Shouse v. State,* 36 Ala.App. 614, 63 So.2d 722, cert. denied 258 Ala. 499, 63 So.2d 728.

The trial court properly denied the motion for a new trial. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

We have carefully examined this record, as required by law, and find same to be free from error. The judgment is therefore due to be and the same is hereby

Affirmed.

All Judges concur.