TYSON, Judge.
James E. Meeks, alias, was indicted for armed robbery of Allen Rosenthal by removing some $80.00 in currency and a substantial quantity of controlled substances from his person and through use of a dangerous instrument, a pistol, in violation of § 13A-8-41, Code of Alabama.
The jury found the appellant “guilty as charged” and following a sentencing hearing, the appellant having been advised that he would be charged as a habitual offender, the trial court set punishment at 15 years’ imprisonment.
Prior to trial, appellant’s counsel filed a motion to suppress, claiming the arrest of appellant and the subsequent charge against him were without probable cause and requested a hearing thereon.
At the suppression hearing, it developed that the appellant was arrested about 6:30 one morning at a motel by two police officers who then took him to police headquarters. According to the statement given by Officer R.H. Davis, the appellant was charged with “robbery investigation” and no warrant had been issued for his arrest at this time.
The record, however, does disclose a full Miranda rights warning and an understanding and intelligent waiver. Approximately an hour later a lineup was conducted at which appellant was positively identified as having been involved in the robbery of Carter Hill Drugstore in Montgomery.
After this identification, the appellant was given his Miranda rights a second time, and again signed a waiver thereof. Following this, the appellant declined to make a written statement, but did give an oral statement to the two officers. The appellant was informed by Officer Davis that Montgomery police had information as to his involvement in some three robberies, including the Carter Hill Drugstore, and the appellant replied that he “had been involved” and that “Bill Mardis was also involved” and that “it did not happen the way that Rhonda Thornton had related it to them.” (R. 19).
On cross-examination, Officer Davis stated that he did obtain a written statement from Rhonda Thornton with reference the appellant.
The foregoing circumstances were corroborated by Montgomery Police Investigator Roy Houlton, Jr., who indicated that the Montgomery officers told appellant that he was involved in the “Shoney’s robbery, the Carter Hill Drug robbery, and a drug store at Millbrook.” He stated they also had informed him that Rhonda Thornton had implicated Meeks in these robberies. While the appellant gave a voluntary oral statement after receiving a Miranda warning on two occasions, and being positively identified at a lineup, appellant declined to put the statement in writing.
The appellant himself also testified at the suppression hearing and stated that he had been staying at Room 26 at the Paradise Motel in Montgomery, when two Montgomery officers awoke him about 6:45 in the morning by loudly knocking on the door; *838 that they threatened to kick the door in if he did not open it and that he asked for a warrant and was told there was none, but that he was wanted for questioning. He denied receiving a Miranda warning at this time or giving the officers permission to enter his motel room. Appellant denied receiving his Miranda warning until after the police lineup and denied making a statement that he was involved in some robberies with one Bill Mardis and that he had asked for an attorney before the lineup, but was not provided with one.
On cross-examination, the appellant admitted that the room at the Paradise Motel was not registered in his name nor was he paying for it and that he did not recall in whose name same was registered. He denied receiving his Miranda rights until after the police lineup and stated it was later that same afternoon before he was given his Miranda warning and that he was handcuffed to a chair and was going through a “drug withdrawal” before he made the oral statement to the officers.
The trial court denied the appellant’s motion to suppress and the trial was had upon the indictment in question.
At trial, Allen Rosenthal, a co-owner of Carter Hill Drugs testified that on July 22, 1981, at approximately 7:30 p.m. the appellant and a companion entered his drug store on Carter Hill Road, Montgomery, Alabama, and that the appellant walked up to him in the prescription department and, as he started to come from behind the counter, the appellant pointed a gun at him and told him he wanted to look at his stock of class “A” drugs. Rosenthal stated that he retreated into the prescription department and that appellant directed him to open the locked drawer where the drugs were kept. In just a few moments a companion of the appellant marched the store cashier, one Marsha Jackson, to the prescription department and told her to remain there while the appellant began putting the quantity of drugs into a bag.
While the robbery was in progress, a customer came into the store and appellant’s companion went to the front of the store and waited on the customer. About this time the deliveryman returned to the store and appellant’s companion marched him back to the prescription department where all three were made to lie on the floor and their hands and feet were taped behind them. The telephone cords were cut and after removing the drugs, the two robbers fled.
Rosenthal stated that he had been able to push the alarm button and within a few minutes after the two men left, the police entered the store. Rosenthal made a positive in-court identification of the appellant based on his view of Meeks on the night of July 22,1981, in Carter Hill Drugstore. Ro-senthal stated that he had not taken part in any police lineup, nor had he looked at any police “mug books”, but that his identification was from looking at the appellant on the night of the robbery. He stated that some $80.00 in United States currency had been taken from the cash register and a large quantity of drugs including Codeine, Methaqualone, Amobarbital, Pentobarbital, Diazepan and Pethadine were all removed by the appellant at pistol point. On recross-examination, Rosenthal stated that appellant’s companion had demanded some Dilaudid and was told that he had none in the store.
William Sanders, the deliveryman at Nor-mandale and Carter Hill Drugstores, related that he entered the Carter Hill Drugstore shortly after 7:30 p.m. on July 22, 1981, and was marched at pistol-point by a white male into the prescription department where the owner, Mr. Rosenthal, and the cashier, Marsha Jackson, were standing. He stated that the three of them were made to lie on the floor and that their hands and feet were taped behind their backs. He stated that while he looked at the two men while lying on the floor, he could not make a positive identification of the appellant but that he “certainly looked like the man he had seen in the store.” Sanders indicated that he had not participated in a lineup, but had viewed a police “mug book” and that he had seen a picture *839 of a man who looked like the appellant, but who had a different type beard.
Marsha Jackson testified that she was cashier of Carter Hill Drugstore in Montgomery, Alabama, on July 22, 1981. She stated that two men entered the store shortly after 7:30 and one walked into the back and one went over to look at some birthday cards. She stated that she went over to speak to the man who was looking at the cards and he then pointed a pistol at her and told her to march to the prescription department where the taller of the two men was holding a pistol on the owner, Allen Rosenthal. She stated that while she was in the prescription department a customer came into the store and that the shorter of the two men walked to the front, waited on the customer and as the customer left, the deliveryman, William Sanders, walked in. The shorter man then marched Sanders into the prescription department where all three were made to lie upon the floor and their hands and feet were taped behind them. She stated that the telephone was ringing but the two men cut the wires to the telephone in the office and in the pharmacy, but that Mr. Rosenthal had pushed the silent alarm button. Ms. Jackson made a positive in-court identification of the appellant as being the taller of the two men who had walked to the prescription department and removed the drugs while holding a gun on Mr. Rosenthal. She gave a description of the clothing worn by the two men and stated that she had made an identification at a police lineup of appellant, but that the identification she made of appellant in court was based upon her observation of appellant at Carter Hill Drugstore on the night of July 22, 1981.
Montgomery Police Investigator, T.H. Roper, testified that he interviewed James Meeks on August 13, 1981, at Montgomery Police Headquarters. He stated that before talking with him, he had read the appellant his Miranda rights and appellant signed a waiver thereof which was placed in evidence as State’s Exhibit 2. He stated that Investigator R.H. Houlton was present and that without any threats, intimidation, coercion or inducements, appellant signed the waiver and that the two men briefly talked to appellant. He stated that appellant told him that he had been involved in some robberies with another white male named Bill Mardis but made the statement that “it did not happen like it was told” to us and that the appellant declined to sign a written statement. (R. 102).
Rhonda Thornton testified she was appellant’s girl friend and had gone in the Carter Hill Drugstore around lunch time on July 22, 1981, with appellant and that they had purchased a card and that afternoon appellant told her, “that drugstore would be easy to rob.” She stated later that night the appellant called her and told her that Bill Mardis would be with him and that they were coming by to pick her up. She described the clothing which the men were wearing and stated that appellant told her that they “had just robbed the Carter Hill Drugstore” and said that they had left three people, two men and a woman, tied up in back of the store. She said that Mardis had told her that he had waited on a customer during the robbery and that the customer evidently thought that he (Mar-dis) “was a stock boy” because he had trouble getting the register open. He said the two men told her they obtained “Quaaludes, Dilaudids, Demerol, Seconal, and two other drugs”, all Class “A” narcotics. (R. 112).
On cross-examination, Rhonda Thornton stated that she was 18 years of age and had been dating the appellant some four to six months at the time of the robbery, but that they no longer were going together. She stated that she had been taking Quaaludes, but that she was no longer taking any drugs. She admitted that on one occasion she had been charged with the sale of cocaine, but insisted that there had been no agreements made by any Montgomery Police Officer or anyone from the district attorney’s office with reference her testimony in the case at bar. She said there had been no offer of any kind made to her for her testimony nor a suggestion made that she get a lighter sentence. She testified that she was working at the Montgomery Mall at Teens and Tweens.
*840 Appellant’s motion to exclude his oral statement and his motion to exclude the state’s evidence for lack of a prima facie case and because the state’s case was based on an arrest without probable cause were all overruled.
The appellant did not testify nor present any evidence in his behalf at trial. There was no exception to the oral charge of the trial court and the trial judge gave five of the written requested charges while denying 13 other written charges. The appellant’s motion for new trial challenging the weight and sufficiency of the state’s evidence was overruled.
I
The appellant essentially bases his argument on the premise that the arrest of the appellant on the morning of August 13, 1981, at approximately 6:45 a.m. at the Paradise Motel in Montgomery, Alabama, was unlawful in that the Montgomery officers had no probable cause and did not. present the appellant with an arrest warrant or search warrant when taking him to Montgomery Police Headquarters for questioning. In brief the appellant cites this court to Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
There are several striking differences between the cases relied upon by appellant in brief and argument and the facts out of which the arrest and conviction of the appellant in this cause arise. To begin with, there were absolutely no “fruits” of the arrest placed in evidence at trial in this cause, unless one terms the appellant’s “description” and person of the appellant to be a “fruit”. Moreover, while the appellant admits he was given his Miranda rights, but insists that he was “on drugs” at the time of interrogation at police headquarters, there had been an intervening factor in this cause, namely that of a properly conducted police lineup, at which the appellant was positively identified by Marsha Jackson, the cashier at the drugstore where the robbery in question took place. It was only after this identification and the statement made to the appellant by the officers “that they knew he was involved in some robberies,” that he signed the written waiver and made his oral statement that he “had been involved in some robberies with Bill Mardis, but it wasn’t the way the police had been told.”
We are of the opinion that the conflict in the Montgomery officers’ testimony and that of the appellant as to their advising him of his constitutional rights presented a conflict which was properly resolved by the trial judge contrary to appellant’s contentions. See Taylor v. State, 399 So.2d 881 (Ala.1981) and authorities there cited.
We are also of the opinion that the case of United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) is dispositive of the instant appeal.
Despite the contentions of the appellant with reference the arrest which he challenges, the appellant admitted at the suppression hearing that he was not the party in whose name the motel room was registered, nor did he claim any possessory interest therein. Moreover, no “fruits” of this arrest were placed in evidence at trial, other than the identification of the appellant by two eyewitnesses, both of whom based their identification of appellant on the events which occurred on the night of the robbery of the Carter Hill Drugstore, and which identifications antedate the subsequent police lineup on August 13, 1981, at Montgomery Police Headquarters. Moreover, the deliveryman, Sanders, also stated that the appellant “looked like” one of the robbers, but he could not be certain, but that his observances were based on seeing the appellant “at the time of the robbery.”
Inasmuch as the trial court found that the witnesses’ court room identifications rested upon their independent recollections of the appellant, and were uninfluenced by subsequent pre-trial events, we are of the opinion that this ruling at trial is correct. United States v. Crews, supra; Jones v. *841 State, 412 So.2d 1247 (Ala.Crim.App.1982), and cases cited therein.
We therefore believe that the trial court correctly denied appellant’s motion to suppress and motion to exclude based upon his alleged “lack of probable cause.”
We have carefully considered other matters raised within the record and find them to be without legal merit. For the reasons stated, this cause is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.