We granted certiorari to review the decisions of the Court of Criminal Appeals in Meeks v. State, 434 So.2d 843 (Ala.Cr.App. 1982), and Meeks v. State, 434 So.2d 836 (Ala.Cr.App. 1982), which affirmed Meeks's convictions. The principal issue presented for our consideration is whether the trial court erred in admitting evidence of defendant Meeks's confession. We hold *Page 845 
that the evidence was improperly admitted and reverse the judgments of the Court of Criminal Appeals.
In the early morning hours of July 19, 1981, Mr. Renoir T. Britt was performing his duties as a night porter at Shoney's Restaurant in Montgomery. A man, later identified as the defendant, threatened Mr. Britt with a pistol, demanded entrance to the restaurant office, and tied Mr. Britt's arms and legs. The man, identified at trial as Meeks, then removed from the office a safe containing approximately $1,500 and drove away from the restaurant in Mr. Britt's car.
On July 22, 1981, two men entered the Carter Hill Drugstore in Montgomery and robbed the store of various controlled substances and approximately $80.00 in cash. Allen Rosenthal, a co-owner of the Carter Hill Drugstore, testified that Meeks approached him at the prescription counter, pointed a gun at him, and told him he wanted his stock of "Class A" drugs. Meeks's companion marched the store cashier, Marsha Jackson, to the prescription department and told her to remain there. During the robbery, a delivery man, William Sanders, entered the store, and Meeks's companion escorted him to the prescription department, where the three victims were made to lie on the floor while their hands and feet were taped behind them.
Meeks was taken into custody on August 13, 1981, at 6:30 a.m. by two police officers at the Paradise Motel. There is no evidence in the record regarding the identity of the officers and there was no warrant for the arrest. Corporal R.H. Davis of the Montgomery Police Department testified that he advised Meeks of his constitutional rights at approximately 9:40 a.m. on August 13, 1981, and obtained Meeks's signature on a waiver of rights form. At the suppression hearing, Corporal Davis testified that the charge against Meeks was "robbery investigation," because at the time Meeks was taken into custody no warrant had been issued. A line-up was commenced at 10:45 a.m., at which time Meeks was positively identified by three of the robbery victims.
T.H. Roper, an investigator in the Robbery-Homicide Division, testified at trial in both the Shoney's and the Carter Hill Drugstore robbery cases that he talked with Meeks on August 13, 1981. He stated that he advised Meeks of his constitutional rights and obtained Meeks's signature on a waiver of rights form at 12:30 p.m. Roper testified that he and Investigator Houlton related information received from Meeks's girlfriend, Rhonda Thornton, concerning Meeks's involvement in the robberies. Roper testified that Meeks made an oral statement at approximately 12:45 p.m. that he had been involved in some robberies, but that the robberies did not occur in the manner described by Thornton.
Three police officers testified at the pretrial suppression hearing. Corporal Davis testified that Meeks was arrested because of information received from a reliable informant that Meeks and others were involved in the drugstore robbery. Davis, however, admitted that the information had not been given to him and that he did not know the identity of the informant. Roper testified, but could not identify the officers who arrested Meeks, nor could he provide any information concerning the identity of the informant. Roper testified that Thornton and Meeks were picked up at about the same time. In fact, the trial court stated that it was undisputed that the police did not have the information from Thornton prior to the time Meeks was taken into custody. Investigator Houlton testified, but did not identify the arresting officers or the informant.
Meeks made a motion to suppress all testimony and identifications arising out of the police line-up, the testimony of other witnesses, and all other evidence, based on the ground that his arrest was without probable cause and that the evidence the State expected to use was obtained as a result of the illegal arrest. The trial court denied the motion to suppress.
The first issue we address is whether the police had probable cause to arrest the defendant. *Page 846 
Section 15-10-3 (3), Code 1975, enables a police officer to arrest a person without a warrant "[w]hen a felony has been committed and he has reasonable cause to believe that the person arrested committed it." This "reasonable cause" requirement has been equated with probable cause. Knight v.State, 346 So.2d 478 (Ala.Cr.App. 1977). The constitutional validity of an arrest depends upon whether,
 "at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."
Thomas v. State, 50 Ala. App. 227, 235, 278 So.2d 230, 237
(Ala.Cr.App. 1973).
It has been held that an officer cannot justify an arrest without a warrant on the ground that he has reasonable cause to believe that the person arrested has committed a felony, unless he has information or facts derived from credible sources or from persons reasonably presumed to know the facts, which, if submitted to a magistrate, would require the issuance of an arrest warrant. Thomas v. State, 50 Ala. App. at 235,278 So.2d at 237. If probable cause is to be based on an informant's information, two requirements must be met: (1) The underlying circumstances must show the officer's reason to believe the informant is a credible person or that the information is reliable, and (2) the circumstances must show the basis of the conclusions reached by the informant. Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Knight v.State, 346 So.2d 478 (Ala.Cr.App. 1977).
Looking at the facts in this case, we are of the opinion that the record positively discloses that the State failed in its burden of proving probable cause to make an arrest. Testimony from witnesses for the State failed to reveal the identity of the arresting officers. Even if knowledge of one police officer was imputed to the arresting officers, Cook v. State,56 Ala. App. 250, 320 So.2d 764 (Ala.Cr.App. 1975), there is no evidence in the record of the identity of the officer directing the arrest and no evidence that any such officer had probable cause to make an arrest. No evidence was presented of circumstances showing the officer's reason to believe that the unidentified informant was a credible person or that the information was reliable. Furthermore, information from the unidentified informant may not be used to establish the existence of probable cause, because it was not corroborated by any additional information. Spinelli v. United States,393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Knight v. State,346 So.2d 478 (Ala.Cr.App. 1977). Nor do we find any indication of the existence of probable cause to make an arrest in Investigator Houlton's statement that Meeks fit the description of one of the robbers.
Having established the primary illegality of Meeks's arrest, we next consider whether the evidence to which petitioner's objection is made was procured by exploitation of that illegality or by a means sufficiently distinguishable to be purged of the primary taint. Wong Sun v. United States,371 U.S. 471, 487-88, 83 S.Ct. 407, 417-418, 9 L.Ed.2d 441 (1963).
The Court of Criminal Appeals held that no "fruits" of the arrest were placed in evidence in this case. We must disagree. This holding ignores the testimony of Investigator Roper in both the Carter Hill Drugstore and Shoney's robbery cases that Meeks admitted his involvement in the robberies. The United States Supreme Court in Wong Sun v. United States,371 U.S. at 484, 83 S.Ct. at 415, stated: "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." The exclusionary sanction clearly applies to confessions or statements of the accused obtained during an illegal arrest and detention. Taylor v. Alabama, 457 U.S. 687,102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Dunaway v. New York,442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v.Illinois, 422 U.S. 590, *Page 847 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Under the above cited cases there is no question that petitioner's confession was the fruit of his illegal arrest.
The question thus becomes whether, under the facts of this case, the confession has been purged of the taint of an illegal arrest under the standards enunciated in Wong Sun and its progeny.
In Wong Sun v. United States, the Court stated:
 "We need not hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"
371 U.S. at 487-88, 83 S.Ct. at 417-418 (quoting Maquire, Evidence of Guilt, 221 (1959)).
The Court of Criminal Appeals in the present case concluded that the "properly conducted police lineup" and positive identification by Marsha Jackson were intervening factors sufficient to break the causal connection.
The Court of Criminal Appeals indicated that it found UnitedStates v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537
(1980), dispositive of the issue on appeal. We do not readCrews as supporting the conclusion that a police line-up, itself a suppressible fruit of an illegal arrest, constitutes, in and of itself, an intervening factor. In Crews, the Court refused to order the suppression of an in-court identification, although the victim had identified the accused at a pre-trial line-up and from photographs taken after an illegal arrest of the accused. The Court found that the in-court identification of the accused was admissible because the police knowledge of the defendant's identity and the victim's independent recollections of the defendant antedated the unlawful arrest and were, therefore, not tainted by the constitutional violation. 445 U.S. at 477, 100 S.Ct. at 1253. We do not readCrews as sanctioning the use of pretrial identifications or as holding that a police line-up constitutes an intervening factor. See, Meeks v. State, 434 So.2d 843 (Ala.Cr.App. 1982) (Bowen, J., dissenting).
The Court in Brown v. Illinois, supra, and Dunaway v. NewYork, supra, set out several factors to be considered in determining whether a confession has been purged of the taint of an illegal arrest. Those factors are: "The temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct." Brown v. Illinois,422 U.S. at 603-604, 95 S.Ct. at 2261-2262; Dunaway v. NewYork, 442 U.S. at 218, 99 S.Ct. at 2259.
We find many similarities in the facts in the present case and those in Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664,73 L.Ed.2d 314 (1982). The Supreme Court in Taylor found that a six-hour period between the arrest and confession did not attenuate the confession from the illegal arrest, where the defendant was in police custody, unrepresented by counsel, was questioned on several occasions, and was fingerprinted and subjected to a line-up. In the case at bar, the time between the arrest and the confession was approximately six hours. In this case, as in Taylor, the defendant was in police custody, unrepresented by counsel, and was subjected to a line-up. Under the facts of the present case, we cannot say that the six-hour period between the arrest and confession is sufficient to remove the taint of the illegal arrest.
Meeks's submission to a police line-up "could [not] possibly have contributed to his ability to consider carefully and objectively his options and to exercise free will." Taylor,457 U.S. at 691, 102 S.Ct. at 2668, 73 L.Ed.2d at 320. Nor do we find determinative the fact that Meeks received Miranda
warnings at least twice. This Court in Taylor v. State,399 So.2d 881, 885 (Ala. 1981), noted the harshness of the exclusionary rule *Page 848 
in situations "where the motion to suppress involves a confession that is admittedly voluntary and where Miranda
rights were given." In reversing this decision, the Supreme Court stated:
 "[T]he fact that the confession may be `voluntary' for purposes of the Fifth Amendment, in the sense that Miranda warnings were given and understood, is not by itself sufficient to purge the taint of the illegal arrest."
457 U.S. at 689, 102 S.Ct. at 2667, 73 L.Ed.2d at 319.
In its brief, the State argues that the police conduct was not flagrant or purposeful and further argues that the present case is distinguishable from Brown and Taylor. We fail to see any relevant distinction between the conduct in the present case and that in Taylor v. Alabama. In Taylor, the Supreme Court, in rejecting a similar argument, noted:
 "In this case, as in Dunaway, the police effectuated an investigatory arrest without probable cause, based on an uncoroborated informant's tip, and involuntarily transported petitioner to the station for interrogation in the hope that something would turn up. The fact that the police did not physically abuse petitioner, or that the confession they obtained may have been `voluntary' for purposes of the Fifth Amendment does not cure the illegality of the initial arrest."
457 U.S. 693, 102 S.Ct. at 2669, 73 L.Ed.2d at 321. The Supreme Court in Taylor explicitly declined to adopt a "good faith" exception to the exclusionary rule.
In conclusion, evidence of defendant's confession was the fruit of an illegal arrest and should not have been admitted at trial. Because of our decision on this issue, we need not address the issue of whether the trial court erred in admitting other evidence presented at trial. Accordingly, we reverse the decision of the Court of Criminal Appeals and remand this case for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.