**UNITED STATES of America**

v.

**Odell GRIFFIN, Sr., Defendant.**

**Crim. No. 83–00146.**

United States District Court,
District of Columbia.

Sept. 26, 1983.

Stanley S. Harris, U.S. Atty., Robert R. Chapman, Asst. U.S. Atty., Washington, D.C., for U.S.

G. Allen Dale, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This case is before the Court on defendant's motions to suppress. Defendant, a convicted felon, is under indictment for possession of two firearms in violation of 18 U.S.C.App. § 1201(a)(1). The guns were discovered in the course of execution of warrants to search an apartment occupied

by defendant's infant son and the child's mother and a car owned by the defendant's mother. During the search of the apartment, a District of Columbia Metropolitan Police detective asked the defendant who the gun discovered in the apartment belonged to. The defendant answered that the gun was his. Defendant now seeks to suppress use of the guns as evidence on the grounds that the warrants were issued without probable cause and use of his statements to the detective on the grounds that defendant had not waived his right to remain silent. The Court conducted a two-day hearing on the motions at which the defendant testified and the defendant and the United States called other witnesses. Upon consideration of the testimony and arguments at the hearing, it is clear that the motion to suppress the guns should be denied while the motion to suppress defendant's statements should be granted.

The story begins when Detective Alan Penberg of the Narcotics Branch of the District of Columbia Metropolitan Police Department submitted an affidavit in support of his application for a search warrant to Judge Hamilton of the D.C. Superior Court on April 27, 1983. The affidavit stated that an anonymous informant had told Detective Penberg that the defendant was selling cocaine from Apartment No. 106 at 50 Hawaii Avenue in Northeast Washington. The informer also stated that the defendant possessed a handgun, and provided Detective Penberg the telephone number of the apartment and the make and model of the car defendant was alleged to be driving. Penberg stated in his affidavit that he went to 50 Hawaii Avenue, observed a car of the make and model identified by the informant, and confirmed that it was registered to an address previously used by the defendant. He also discovered that the apartment and the telephone number were listed under the name of Linda Little. The affidavit further stated that Detective Penberg called the telephone number of the apartment, asked for "Odell," and negotiated a purchase of cocaine. On this information, Superior Court Judge Hamilton issued a warrant for a search of the apartment.

On May 2, 1983 at 9:34 a.m., eight or ten D.C. police officers, including Sergeant Ramon Gonzalez, Detective Carl Stump, and Detective Tyrone Thomas, executed the search warrant. They were admitted to the apartment by the defendant. Also on the premises at the time were Linda Little, defendant's girlfriend, and Odell Griffin Jr., their minor child. Sergeant Gonzalez remained with the defendant and Little in the dining area of the apartment while Stump and Thomas searched the bedroom. Stump discovered a .38 caliber revolver in the bedroom, commented to Thomas that defendant was a convicted felon and could not possess a gun, and then went to the dining area where he told Gonzalez in the presence of the defendant that a gun had been found. Gonzalez then placed defendant under arrest, indicated that he was not placing Little under arrest "at this time," and read both defendant and Little their *Miranda* rights from a card ("P.D. 47") provided by the police department. Gonzalez did not ask defendant whether he wished to waive any of his rights, nor did he read to defendant, or ask him to fill out, the back of the P.D. 47, which contains a written waiver form and provides a place for the suspect to sign as evidence of a waiver. Stump then returned to the bedroom. A few moments later, Detective Thomas entered the dining area and asked "Whose gun is this" while looking at both Little and the defendant. Defendant replied that the gun was his. Defendant testified that he feared that Little (who was on the verge of hysteria) would be placed under arrest and taken away from the child unless he answered.

When the officers found no cocaine in the apartment, they questioned Griffin about the car. Griffin denied that he owned the car. The officers asked the defendant if he would consent to a search of the car. He refused. They asked defendant for the keys so they would not need to tow the car. Defendant refused to provide them. They then asked defendant about a baby carriage in the back seat of the car. Defendant allegedly responded "Take it out, the door is

open." On this evidence, as well as on the strength of the informer's information and the presence of a car registered to an address associated with the defendant in the proximity of the apartment, a search warrant for the car was later issued. A subsequent search of the car uncovered a second gun, but no cocaine.

■ Defendant's claim that there was not probable cause to issue a warrant to search the apartment must be rejected. Defendant in his supporting memorandum makes much of the fact that Detective Penberg relied on second-hand information from an anonymous informer in his affidavit in support of the application for a search warrant. If the warrant rested on such information alone, the warrant could well be invalid under the tests laid out in ·Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), even as those decisions are modified by Illinois v. Gates, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). But the warrant was issued on more than just the informer's allegations; Detective Penberg himself testified that he had personally telephoned to the apartment and negotiated a cocaine sale with a male who answered. At the hearing both Detective Penberg and the defendant offered testimony that corroborated the telephone conversation alleged in the affidavit. For example, defendant confirmed that he had a telephone conversation with a male about the time (3:00 a.m.) when Penberg says he called, but defendant testified that he could not remember whether or not the caller mentioned cocaine. Penberg's testimony about the telephone conversation, so corroborated, has substantially more probative value than defendant's testimony on that subject. Applying Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and the totality of the circumstances test announced in Illinois v. Gates, supra, the Court finds that there was probable cause to issue the warrant for the apartment. The gun and other items found during the search of the apartment are therefore admissible evidence.

■ The. defendant's motion to suppress the statements he made to the police is a different matter. It is well-established that statements of a suspect in custody are inadmissible unless the government has satisfied its burden of showing a knowing and voluntary waiver of defendant's right to remain silent. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), United States v. Frazier, 476 F.2d 891, 898 (D.C.Cir.1973). While such a waiver need not be express, courts look to all the circumstances surrounding the statements of the defendant in deciding whether he knowingly and voluntarily waived his Miranda rights. See United States v. Dorsey, 591 F.2d 922, 932 (D.C.Cir.1978). There can be little doubt that defendant here knew of his right to remain silent at the time he answered the sergeant's questions. He was familiar with the Miranda decision, was well educated, and was read his rights. But it cannot likewise be said that he voluntarily admitted ownership of the gun in question. Under all the circumstances as described by the witnesses at the hearing, Detective Thomas's question contained an implicit threat that unless defendant admitted he owned the gun, Little, the mother of defendant's infant child, would be arrested and taken to jail along with the defendant. Such a threat, however implicit, is grounds for a finding that the defendant did not voluntarily waive his right to remain silent. See Hutto v. Ross, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976). Defendant's statement that the gun found in the apartment was his must therefore be excluded.

A more difficult question is posed by whether defendant's statement that the police would find the car door unlocked was incriminating and whether he waived his privileges with respect to it. For one thing there is some question about whether the statement is incriminating. Indeed, it is not directly so. However, it could support an inference that he controlled the car in which a subsequent warranted search disclosed the second gun.

It is germane to the waiver issue that defendant did not make the statement about the car in the tense environment of the living/dining area of his apartment where he had admitted ownership of gun number one. The statement about the car was made outside the apartment building as the police escorted him to the vehicle that would transport him to their headquarters. Nevertheless, he was handcuffed and still very much under the control of the police. They still retained the option to go back and arrest Little. He was only slightly removed in time and space from that scene, and, it may be inferred, the scene was still vivid in his memory. The incriminating nature of his response was not so obvious as to alert even as well informed a suspect as Griffin to his right to refuse to answer the question. By the same token his answer does not, by its terms and its circumstances, evidence an intelligent waiver of his right to remain silent. Furthermore, just as the police should not have asked the questions they did about gun number one, so they should not have inquired further about the car and baby carriage in the absence of adequate waiver. The motion to suppress that statement will also be granted.

Finally, defendant challenges the warrant issued for the search of the car. He alleges that there was not probable cause to support an allegation that drugs or other illegal items were contained therein. A careful perusal of the affidavit filed in support of the application for a search warrant for the car establishes that probable cause existed independent of the defendant's statement that the car door was unlocked. The police had probable cause to believe that defendant was selling cocaine in the apartment, they knew that a car registered to defendant's mother was parked near the apartment, and they had reason to believe defendant had been using

the car. Under all the circumstances, the probable cause standard established in *Illinois v. Gates, supra,* was satisfied.* The gun and other items discovered in the car are therefore admissible evidence.

---

* The briefs and arguments of the parties failed to address the question of whether the exclusionary rule operates to void a warrant issued in reliance on an affidavit that recites statements elicited from a defendant in violation of *Miranda v. Arizona, supra,* and its progeny. The Court's own brief research did not reveal a controlling precedent on this question. In the absence of such a precedent, the Court finds that such a warrant is not prima facie invalid, particularly in a case like this one where the affidavit recites facts in addition to the improperly obtained statement which could independently establish probable cause.