**UNITED STATES of America,**

v.

**Albert TOCCO, et al.**

**No. 83 CR 650.**

United States District Court,
N.D. Illinois, E.D.

Feb. 22, 1984.

John Evon, Mitchell A. Mars/Steve Miller, Asst. U.S. Attys., Chicago, Ill., for the U.S.

Ronald A. Rascia, Chicago, Ill., for Robert Hucek.

Vincent F. DiPiero, Chicago, Ill., for Joanne Hucek.

Robert A. Novelle, Chicago, Ill., for John J. Hadala.

Donald N. Novelle, Bellwood, Ill., for James J. Kluge.

Patrick Tuite, Ann Lavin, Chicago, Ill., for Tocco.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

A special grand jury indicted the twelve defendants in this case on August 17, 1983, for conspiracy, operation of an illegal gambling business and tax law violations related to gambling, under 18 U.S.C. §§ 371 and 1955, and 26 U.S.C. § 7203. Now before the Court are motions to quash search warrants and suppress evidence filed by defendants Albert Tocco, Joanne Hucek, Robert Hucek, James Kluge and John Hadala.

For the reasons set forth below, the defendants' motions are denied.

Defendants challenge the magistrate's findings of probable cause in connection with the search warrants issued for each of their residences and for Tocco's business premises.

■■■ A judicial officer, who has considerable experience evaluating affidavits in support of search warrants and the reasonable inferences which flow from the sworn facts, is in the best position to determine whether probable cause exists. *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982). After-the-fact scrutiny by courts of an affidavit's sufficiency should not take the form of a *de novo* review. A magistrate's determination of probable cause is to be paid great deference by reviewing courts, *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated. *Rambis* at 622. Moreover, because of the preference for warrants, a lesser showing may establish probable cause when a warrant is obtained than when a warrantless search is made. *United States v. Ventresca*, 380 U.S. 102, 105–06, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965). Thus, doubtful cases should be resolved in favor of upholding the warrant. *Id.; Rambis* at 622.

The Supreme Court recently clarified the manner in which search warrant affidavits are to be evaluated for probable cause in *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Court articulated a "totality of the circumstances" approach which emphasizes the practical, nontechnical nature of probable cause and which "permits a balanced assessment of the relative weights of all the various indicia of reliability" of the facts presented to the magistrate. *Id.* 103 S.Ct. at 2328–30.

In the end, the standard of probable cause is "only the probability, and not a prima facie showing, of criminal activity." *Id.* at 2330 (quoting *Spinelli,* 393 U.S. at 419, 89 S.Ct. at 590). It is against this background that we consider the specific arguments of each of the defendants.

## I. *Tocco's Motions*

### A.

Tocco first moves to quash a search warrant dated August 1, 1980, and to suppress evidence obtained in the August 2, 1980, search of his residence. Tocco states a number of reasons why the search warrant affidavit, sworn to by a Special Agent for the Internal Revenue Service ("I.R.S."), lacks probable cause:

(1) the affidavit contains "double and triple hearsay";

(2) the reliability of the government's confidential informant was not established;

(3) descriptions of trash recoveries in the affidavit do not specify the premises from which the trash was taken; and

(4) the premises in question are not sufficiently connected to defendant Tocco.

■ A finding of probable cause may rest upon evidence which is not legally competent in a criminal trial, including hearsay. As the Supreme Court held in *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions and his belief that any informer involved was credible or his information reliable. *Id.* at 114, 84 S.Ct. at 1514.

■ The hearsay Tocco complains of includes information the affiant received from other I.R.S. agents and a confidential informant. Observations of fellow government agents engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.

*E.g., Ventresca,* 380 U.S. at 111, 85 S.Ct. at 747.

■ The reliability and credibility of the confidential informant was also sufficiently established. The magistrate knew that the informant had personal knowledge of the information he gave the agents. Moreover, the informant had previously provided accurate information to the government, his information in the present case had been corroborated by the agents' independent investigation, and he had not been paid for his information. The combination of these factors is enough to justify reliance on the information provided by the confidential informant.

■ Tocco's assertion that the affidavit does not adequately describe the premises from which trash was recovered is meritless. A detailed description of the premises containing both the address and physical appearance of the building is made on page two of the affidavit, followed by the notation that the building would thereafter be referred to as "the premises." No other premises are described in the affidavit. Common sense and the plain language of the affidavit dispel any confusion as to the identity of the premises from which trash was recovered.

■ Tocco's claim that he is not adequately associated in the affidavit with these premises likewise fails. He himself had listed these premises with the postal authorities as his present address. Tocco was observed there on several occasions. He received mail in his name at that address. Trash recovered from in front of the premises bears Tocco's name. Thus, Tocco *was* adequately connected to the premises to support the magistrate's findings.

■ Probable cause was established in this affidavit primarily through the information received from the confidential informant and the trash recoveries from Tocco's residence. An evaluation of all the facts presented to the magistrate, particularly under the practical, commonsense approach enunciated by the Supreme Court in *Gates,*

supports the magistrate's finding of probable cause. Therefore, Tocco's motion to quash the August 1, 1980, search warrant and to suppress the evidence obtained in the August 2, 1980, search of his residence is denied.

### B.

Tocco next challenges the validity of a search warrant dated December 12, 1980, and the searches of his residence and business the following day. Tocco repeats many of the same objections which he made to the August 1, 1980, search warrant—these objections fail for the reasons outlined in Section I.A. above.[1]

■■■ Tocco lists twenty additional items from the search warrant affidavit which he suggests demonstrate that the magistrate erred in finding probable cause. We need not discuss these items individually; in fact, such an analysis would be precisely what the Supreme Court rejected in *Gates*.[2] The correct approach is to review the totality of circumstances presented to the magistrate which led to his finding of probable cause.

A survey of the facts placed before the magistrate indicates that he correctly found probable cause for a search of Tocco's residence. The magistrate was informed that the confidential informant knew Tocco for many years and had witnessed Tocco perform various acts in furtherance of his bookmaking business. Trash recovered from the roadway directly in front of Tocco's residence on two separate occasions produced a large quantity of papers with writing and numbers concerning bookmaking activities, as well as numerous football parlay cards, schedules and two master parlay card keys.[3] Pen register information showed a pattern of phone calls linking Tocco's residence to other locations at which wagering activities were known to occur. Finally, the previous search of Tocco's residence on August 2, 1980, had produced additional papers with bookmaking notations. Considered together, these factors support the magistrate's finding of probable cause.

■■■ Similarly, the magistrate reasonably concluded that there was probable cause to search the premises of Tocco's business, City Vending, Inc. The confidential informant knew Tocco to be an owner, operator or associate of City Vending, and in fact Tocco had been seen on the business premises. Some of the papers with bookmaking notations obtained in the trash recoveries from Tocco's residence also bore the words "City Vending" and "Albert Tocco." The August 2, 1980, search of Tocco's residence likewise produced gambling paraphernalia and papers referring to "City Vending." Telephone records and pen registers indicate that numerous phone calls were made between City Vending and eight locations at which persons directly communicated on thousands of occasions with others at places known to be used for wagering activities. The sum of this information demonstrates that the magistrate's findings of probable cause were reasonable. Accordingly, Tocco's motion to quash the December 12, 1980, search warrant and to suppress the evidence discovered in the December 13, 1980, searches of his residence and business premises is denied.

### C.

In a supplemental motion to suppress evidence, Tocco raises additional objections

---

**1.** Contrary to Tocco's assertion that the information provided by the confidential informant had grown stale since August and was thus less reliable, this information had been further corroborated by evidence found in the August 2, 1980, search of Tocco's residence and in trash recovered from Tocco's residence on November 26, 1980. The government contends that these circumstances *enhance* the informant's reliability.

**2.** Moreover, many of the items listed by Tocco relate to residences other than his (the same affidavit was used to show probable cause for searches of ten locations). An examination of these items would thus shed little or no light on the propriety of the magistrate's ruling.

**3.** For the Seventh Circuit's explanation of the relevance of trash recoveries, see *United States v. Kramer*, 711 F.2d 789, 791–92 (7th Cir.1983).

to the government's use of pen registers in this case. He argues that because the government is relying on the length of telephone calls to infer the contents of the phone conversations, the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), requires the government to acquire a warrant before obtaining the pen register information. Since the government had no warrant before it received the pen register data, Tocco reasons that the later search warrants—which were based in part on the pen register information—are invalid.

Tocco's arguments fail, however, in light of the Supreme Court's more recent decision in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In *Smith*, the Court clearly ruled that pen registers do not constitute searches within the meaning of the Fourth Amendment. *Id.* at 745–46, 99 S.Ct. at 2583.

The two other cases cited by Tocco in support of his arguments are inapposite. In *People v. Sporleder*, 666 P.2d 135 (Colo. 1983), the Supreme Court of Colorado interpreted an article of the *state* constitution, not the Fourth Amendment, when it determined that the use of pen registers required a search warrant. *Id.* at 140–41. The second case, *United States v. Algie*, 721 F.2d 1039 (6th Cir.1983), simply held that under the facts of that case, probable cause for a search warrant could not be inferred *solely* from pen register information. The Sixth Circuit emphasized the narrowness of its holding. *Id.* at 1043. The case before this Court differs significantly from *Algie*, in that the government presented many types of information to the magistrate, including confidential source information, trash recovered and examined by federal experts trained in bookmaking analysis, telephone toll records, surveillances and evidence from a prior search, also analyzed by an expert. Thus, the government's acquisition and use of the pen register information was proper, and Tocco's

supplemental motion to suppress evidence is denied.

## II. *Motions of Kluge, Hadala and the Huceks*

Kluge, Hadala and Joanne and Robert Hucek have each filed two virtually identical motions challenging the December 13, 1980, searches of their residences.[4] Basically, these defendants claim that the search warrant affidavit was insufficient to support the magistrate's finding of probable cause. They also argue that although some evidence may have indicated that gambling was occurring in their residences, nothing before the magistrate suggested that they in particular were involved in any illegal activities.

This second argument may be answered quickly. As the Supreme Court has stated, "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976–77, 56 L.Ed.2d 525 (1978). Thus, the search warrant was not invalidated by any failure to show that these particular defendants were responsible for the gambling on the premises.

The defendants' more general claim that the magistrate erred in finding probable cause also fails. As the four defendants themselves seem to concede, trash recovered from their residences in the fall of 1980 and analyzed by an experienced I.R.S. agent indicates that gambling activity was being conducted on those premises. Furthermore, some of the wagering records recovered from the trash clearly relate to Hadala, Kluge and Robert Hucek, and indicate that these three persons deal with each other. Pen registers and records concerning the telephone numbers regis-

---

**4.** Because the Huceks live together, the searches of three, rather than four, residences are at issue in these motions.

tered to the defendants' premises also link the defendants to each other as well as to locations known to be used for gambling activities. Surveillances of the defendants and their automobiles also connected them to the residences which were searched. Thus, the totality of facts and circumstances presented to the magistrate was clearly sufficient to establish probable cause for searches of the defendants' residences. *See Illinois v. Gates.*

Accordingly, the defendants' motions to quash the search warrants of their residences and to suppress evidence obtained in the searches made under those warrants are denied. It is so ordered.