LEIGH M. CLARK, Retired Circuit Judge.
This is a consolidated appeal from two judgments of conviction and sentence in two separate cases (CC-82-266 and CC-82-267). The indictment in each ease charged that defendant did on a specified day, “unlawfully sell, furnish or give away Marijuana, a controlled substance, to Michael Anthony Cotten,[1] contrary to and in violation of the provisions of the Alabama Uniform Controlled Substances Act, in violation of § 20-2-70 of the Code of Alabama.” The only difference between the language of one indictment and the language of the other is that in one indictment it was alleged that the alleged crime occurred “on or about, to-wit: October 20, 1981,” while in the other it was charged that it occurred “on or about, to-wit: November 2, 1981.” In a third consolidated case, which charged that on to-wit: November 3, 1981, defendant possessed a specified controlled substance, not marijuana, on which the jury was not able to reach a verdict and, according to the records before us, the charge was subsequently nol-prossed. In one of the two eases in which defendant was convicted, the jury assessed a fine of $2,500.00 and in the other a fine of $6,500.00. The court adjudged the defendant guilty in each ease, in accordance with the verdict of the jury as to defendant’s guilt and the fine assessed, and sentenced him to imprisonment for fifteen years, with the terms of imprisonment to run consecutively to each other and consecutively to a sentence defendant was already serving in the state of Florida.
In due course, a motion for a new trial was filed, which was overruled by the trial court. The trial court also denied a motion of defendant to reconsider the sentence in each case, as well as defendant’s motion that he be declared indigent and for the court to appoint an attorney to represent him on appeal. The attorney who represents him on appeal is not the same attorney who represented him on the trial.
The person who is named in the indictment in each of the two marijuana cases, Michael Cotton, was the principal witness against the defendant as to the precise charge of the indictment. He was employed by Galanos Ship Supply as a truck driver, and he was also a reserve police officer with the city of Mobile, and had been such for three years and a half at the *124 time of the trial on February 3, 1983. He stated that the functions of a reserve police officer included “undercover operations,” that one “is used as a patrolman, as well as a narcotics agent and in a number of things.” He testified that he met with the defendant, who at the time was driving a van, at a service station in Mobile late in October of 1981, and had a conversation with defendant. He said that they chiefly discussed “about his van and needing drugs.” According to his testimony, he reported “to David Wilhelm, investigator from the D.A.’s — District Attorney’s office that he had had the conversation with defendant,” and was sent by the investigator to Officer Rassie Smith. He further testified that on October 20, 1981, the following occurred:
“I remember Officer Rassie Smith and Investigator David Wilhelm from the D.A.’s office where we was planning it out to make a buy, $5.00 buy of marijuana. We left from the D.A.’s office and went to Cleophus Archie’s residence where I was dropped off several blocks from his residence.
“Q. Who took you?
“A. David Wilhelm and Officer Rassie Smith.
“Q. And did you go into the defendant’s house?
“A. Yes.
“Q. Now, while you were in there, was he there?
“A. Yes.
“Q. Was there anyone else there?
“A. Yes.
“Q. Male?
“A. Yes.
“Q. Did you know who they were?
“A. Some people I did.
“Q. Now did one of those black males say anything to that defendant—
“MR. PALUGHI [Defendant’s Attorney]: Wait a minute. I object to the statement black male. I don’t think he said they were black.
“Q. Were they black?
“A. Yes.
“Q. Did one of them say anything to that man in your presence regarding marijuana?
“A. Yes, he did.
“Q. Tell the jury what he said?
“A. The black male got off the phone. He was speaking to someone about a ship that was coming in the weekend of that week that had marijuana on it. “Q. All right, sir. Did you buy anything from that defendant?
“A. Yes, I did.
“Q. What did you buy?
“A. I bought $5.00 worth of marijuana. “Q. And did you give him $5.00?
“A. Yes.
“Q. What did he give you?
“A. Gave me a brown envelope containing marijuana.
“Q. Now after that, did you later go out and try to make another buy from that man?
“A. Yes.
“Q. Would that have been on or about the 2nd of November of 1981?
“A. Yes, it was.
“Q. Tell the jury what happened then? “A. I met with Rassie Smith and David Wilhelm again at the D.A.’s office. It was Saturday afternoon. We left in separate vehicles where I went to Cleophus Archie’s residence and purchased a $20.00 bag of marijuana contained in a plastic sandwich bag.
“Q. And what did you do with that marijuana?
“A. Turned it over to Rassie Smith.
“Q. Where did you actually make the buy of $20.00 of marijuana from him? “A. Inside the van in the front of the house.
“Q. Inside the van?
“A. Yes.
“Q. Tell the jury what all happened inside the van when you made that buy? “A. First he had a large plastic container, a large bag, plastic bag that contained more marijuana. He took mari *125 juana out of the large bag and put it in a smaller sandwich bag.
“Q. That is what he gave to you?
“A. Yes.
“Q. Did ya’ll have any conversation at that time about purchasing any more marijuana?
“A. Yes.
“Q. Tell the jury about that?
“A. I was — we was having a conversation about purchasing two pounds of marijuana and I told him that I was going to meet my partner and see if we could come up with the money to purchase it with.
“Q. All right. And did he make any other statement to you about furnishing more pounds in the future?
“A. Yes.
“Q. What did he say?
“A. He could furnish me with all the pounds that I can move.
“Q. And you gave all of this information to Officer Smith?
“A. Yes.”
Mr. Michael Cotton also testified extensively on cross-examination, and briefly on direct examination, as to his having been charged in February of 1981 “with theft from a place where you [he] was working,” that by reason thereof he was suspended from his work with the police department, but was afterwards reinstated. He said the case against him for alleged theft “was ultimately no billed by the grand jury of Mobile County.” There was an apparent stipulation that the charge “was no billed in June of 1981.” The witness was intensely and comprehensively cross-examined as to the charge of theft and as to his relation with law enforcement authorities, including representatives of the district attorney’s office, during the time the charge was pending against him, after it was “no billed” by the grand jury, and until the trial of the instant case. Much of the evidence as to this inquiry was repetitious of similar evidence introduced on the hearing of defendant’s motion to suppress evidence “seized in the search of the Defendant’s Mother’s home and van in that there was not a sufficient showing of reliability of” Michael Anthony Cotton as the person whose information furnished chiefly the basis for affidavits by a regular officer of the Mobile Police Department in support of the issuance of two search warrants that were duly executed, one for the home of defendant’s mother and one for the van defendant was operating. The overruling of defendant’s motion to suppress testimony as to what was found in the home of defendant’s mother and in the van driven by defendant constitutes the first issue presented in the brief of counsel for appellant, which we now consider.
Among the cases relied upon by appellant’s attorney in support of his contention that the trial court was in error in denying defendant’s motion to suppress testimony pertaining to the fruits of the search of the residence of defendant’s mother and the van defendant was operating, is the relatively recent case of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The majority and minority opinions therein furnish much food for thought on the subject of whether one’s Fourth Amendment right to security against unreasonable searches and seizures has been violated, but they furnish no support for appellant’s contention. Indeed, the five to four majority opinion, with a sixth Justice concurring in the judgment, is more favorable to appellee than appellant. By the majority opinion, the Supreme Court replaced the “two-pronged test” in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, with a standard less favorable to an accused, which is epitomized in part as follows at 462 U.S. —, 103 S.Ct. 2332, 76 L.Ed.2d 548:
“For all these reasons, we conclude that it is wiser to abandon the ‘two-pronged’ test established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determination. See Jones v. United States, supra [362 U.S. 257, 80 *126 S.Ct. 725, 4 L.Ed.2d 697 (1960) ] United States v. Ventresca, supra, [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)]; Brinegar v. United States, supra [338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ]. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime could be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a ‘substantial basis for ... con-cludpng]’ that probable cause existed. Jones v. United States, supra, 362 U.S., at 271, 4 L.Ed.2d 697, 80 S.Ct. 725 [736] 78 ALR2d 233. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli."
Even without a relaxation by Illinois v. Gates, of the previously applied rule of exclusion, we are convinced that the trial court was not in error in overruling defendant’s motion to suppress testimony as to what was found in the residence and van when they were searched pursuant to the warrants based in pertinent part on the affidavits of Officer Rassie Smith of the Mobile Police Department. In each of the affidavits, Officer Smith said, “I am presently assigned to the Narcotics Section. On November 2, 1981, I received the following information from a reliable informant who has made two (2) drug buys resulting in two (2) drug sale cases, and although no arrests have been made to this date, the cases will be presented to the next Grand Jury.” In the affidavit for the search of the van, Officer Smith stated:
“Within the past forty-eight (48) hours, the informant observed B/M Cleophus Archie place a large plastic bag of green plant material inside a 1981 Dodge Disco Van with purple and blue colors, bearing AL license tag #RUH-753 which was parked at his residence at 954 Wellington Street.
“This substance was represented by Cleophus Archie to be Marijuana. I know that Marijuana is commonly packaged in this manner and has this appearance. I have frequently come into contact with persons using and handling this drug in my duties as a narcotic officer.”
In the affidavit for the search of the residence is the following:
“The informant stated that within the past forty-eight hours, he was at the residence known to informant as 954 Wellington Street, Mobile, Alabama, the residence of a B/M Cleophus Archie and B/M Johnnie Archie. While at the residence at that time the • informant observed a large amount of green plant material in plastic bags. This substance was represented by Cleophus Archie to be Marijuana. I know that Marijuana is commonly packaged in this manner and has this appearance. I have frequently come into contact with persons using and handling this drug in my duties as a narcotic Officer.”
The gist of the defendant’s contention on the trial and the contention of the brief of attorney for appellant is to the effect that there was some impropriety in the affiant’s reference to the person from whom he had obtained his information as a “reliable informant,” that Michael Cotton was not a reliable informant. Perhaps the affiant should have been more candid in his affidavits and perhaps Michael Cotton would have been the appropriate person to make the affidavit for each of the search warrants, but we do not see that any of such criticism is sufficient to vitiate either of the warrants. Nor are we convinced that appellant has shown that Michael Cotton was an unreliable informant. In cases relied upon by appellant antedating Illinois v. Gates, supra, in which the affidavits based on hearsay have been held insufficient, the persons referred to therein as informers or informants were not reserve police officers, as was Cotton. Whatever *127 blemish there is on Cotton’s reputation by reason of his having been once charged with a crime involving moral turpitude, it is not sufficient to support appellant’s contention that he was unreliable.
The trial court was not in error in overruling defendant’s motion to suppress the testimony as to what was found in the execution of either the warrant to search the residence or the warrant to search the van. Although there is undesirable vagueness at times as to the rightful ownership and possession of the residence and the van, it is clear that defendant lived at the residence and at times operated the van. We agree with some of appellant’s criticism of the language of the affidavits, particularly in its lack of clarity and its tendency to confuse or mislead one into the belief that the informant’s information that he had made two drug buys had been established as true in the mind of the affiant, but each affidavit when considered as a whole shows with reasonable certainty that as of the time of the affidavit no action had been taken to establish the truth of such information. This leads to the conclusion that there was no effort made to mislead or deceive. We do not doubt the existence of an imbroglio, but we cannot place the full responsibility therefor upon any representative of either of the parties or upon the trial court. That it was confusing tends to explain the inability of the jury to arrive at a verdict in one of the three eases consolidated for trial by consent of both parties.
The second issue presented in appellant’s brief is as follows:
“The Trial Court erred in denying the Defendant’s Motion to Determine Conflict in that the representation of Archie and his mother, the owner of the van, placed the attorney in a position where he could not simultaneously champion the interest of the Defendant and those of his mother as forfeiture of the van had been part of the prenegotiations.”
On December 12, 1982, defendant’s attorney in the trial court filed a motion captioned, “MOTION TO DETERMINE CONFLICT” and above the caption of the motion is the legend, “CASE NO. CC82-266 Thru CC82-26.”[2] The motion is as follows:
“Comes now Peter J. Palughi, Attorney for the defense and moves this Honorable Court to determine if a conflict of interest exists between the Defendant and his Attorney in that Defendant’s Attorney represents the Defendant and Defendant’s mother, Mary Archie. The Defendant’s Attorney represents Mary Archie in a case in Equity, wherein the State is attempting to confiscate a van automobile. The van automobile has become a part of the plea bargaining between the State and the Defendant in regard to his four criminal charges. The Defendant’s Attorney has examined and questioned the Defendant and personally does not feel there is a conflict; however, the Defendant should be examined by the Court and the question should be determined by the Court and the Defendant so moves.”
We find no reference in the record proper or in the transcript of the proceedings to any action on the motion just quoted. Whether the motion was ever presented to the trial court, we do not know. The record indicates that it was not filed in open court but was filed with the clerk about a month and a half before the case was called for trial, February 9, 1983. There is no court reporter’s transcript as to any of the proceedings prior to February 9, 1983. Appellee’s counsel responds to appellant’s contention in part by stating:
“At the trial of defendant, defense counsel filed a motion to determine conflict in that the attorney [was] representing the defendant while representing the defendant’s Mother in another action wherein the State was seeking to confiscate the van in which the drugs were found. However, the record does not contain any adverse ruling which can be re *128 viewed by this Court. The State would therefore contend that nothing is presented for review by this Court.”
Appellant’s attorney strongly responds to appellee’s argument as follows:
“Archie's attorney filed a motion with the trial court to determine if he had a conflict of interests in the ease. The trial attorney thus fulfilled the requirements of the American Bar Association Standards for Criminal Justice, Standards Relating to the Defense Function, Section 3.5(a). These instructions were cited with approval by this Honorable Court in Pinkerton v. State, 395 So.2d 1080, at 1090 (Ala.Cr.App.1981). Even though ‘no objection appeared during the trial from any party involved, nor did the trial court pause to inquire as to any possible conflict of interest’ Id. This Honorable Court reversed the Pinkerton case because the defense attorney had formerly represented the informer whose information had led to the arrest of defendant and who testified at trial.
“In the case at bar, the trial court failed to give the defense attorney benefit of its counsel. Trial counsel had no choice but to continue in the matter. As demonstrated earlier, defense counsel violated Canons 5 and 9 of the Code of Professional Responsibility of the Alabama State Bar. (Appellant’s Brief, pgs. 18, 19). Due to this conflict of interest, the Defendant was denied his 6th Amendment right to effective assistance of counsel.”
We are unable to reconcile the statement in the second paragraph of the two-paragraph portion of defendant’s brief, that “Defense counsel violated canons 5 and 9 of the Code of Professional Responsibility of the Alabama State Bar,” with the statement in the first paragraph that he “fulfilled the requirements of the American Bar Association Standards for Criminal Justice.” We are inclined to the view that probably there was no genuine conflict of interest and that the defendant and defendant’s mother so importuned the attorney to represent them both that the motion was never presented to the trial court for a ruling thereon. The transcript shows that defendant’s mother testified voluntarily on call of the defendant and testified forthrightly and profusely in his behalf, but her testimony was confined almost exclusively to the issue presented in the ease for possession of a controlled substance, the case in which the jury was unable to reach a verdict and which was eventually nol-prossed. The case of Pinkerton v. State, supra, in which defendant’s attorney also represented the “informer” as to the criminal transaction, is inapposite. Zuck v. Alabama, 588 F.2d 436 (5 Cir.1979), in which defendant’s attorney represented the prosecuting attorney in Zuck in an unrelated case, and Castillo v. Estelle, 504 F.2d 1243 (5 Cir.1974), in which defendant’s attorney was simultaneously representing the victim of the crime charged against defendant in an unrelated civil matter, are also inappo-site. We mention only the only cases relied upon by appellant. However conflicting the interests of the two may have been as to the condemnation proceeding against the motorized van or' even as to the case for possession of a prohibited substance, there apparently, at least, was no conflict of interest whatever between them as to either of the two cases for the sale of marijuana, and appellant’s contention that he was represented on the trial by counsel who simultaneously represented one with an interest adverse to appellant is not well taken.
Appellant’s third contention for a reversal is thus stated in his brief:
“The Trial Court erred in allowing the State of Alabama to present the evidence of marijuana seized from the person of the Defendant at his arrest and seized from the van that he was driving when he was arrested in that it was evidence of a separate and distinct criminal act from those at bar, and was not relevant to any issue before the court and was extremely prejudicial.”
The transcript of the proceedings relied upon by appellant in his argument as to his third contention is cited in appellant’s brief as “(R-31, 45, 49, 54) ... (R. 33, 45, 48, *129 50).” All of the cited pages of the transcript dealt with a hearing out of the presence of the jury on defendant’s motion to suppress. There was some evidence presented to the jury on the trial of the case as to marijuana found on the person of defendant and in the van at the time of his arrest, largely during the direct examination of the defendant, but there was no contention made during that time that such evidence was inadmissible. No ruling on the point was invoked by defendant, and no error prejudicial to defendant was committed.
In appellant’s brief, his final contention for a reversal is as follows:
“The Trial Court erred in not allowing the Defendant to argue that the State had offered to recommend that the Defendant be given concurrent sentences with the one he was serving in Florida in exchange for forfeiture of his mother’s van, in that it was relevant to an issue in the trial and was not otherwise incompetent evidence.”
In appellee’s brief, its response is partly, “In concluding the State must note that it can find no indication in the record in this case that the trial court limited the defendant’s closing argument.” In appellant’s reply brief, he makes it clear that his final contention is directed at the opening statement of counsel for defendant, prior to the presentation of any evidence, and quotes therefrom as follows:
“MR. PALUGHI: We expect the evidence to show that this man’s family, his mother, which he drives from time to time, owned and had in her name a van that was worth approximately $15,000 and that the State after hearing the testimony of Michael Cotton led the conviscation [which we construe as “confiscation”] or has the action in law and equity to take that van.
“MR. COPELAND: Now, if the Court please, I hate to interrupt him but he knows that we filed those motions any time that there is a dope deal in a van. I thought Your Honor has instructed him on that. I don’t think it’s relevant and I object to it.
“MR. PALUGHI: But only ... in this case it would not. In this case we have a person who’s very interested in pleasing the District Attorney’s Office.
“THE COURT: Well, we are not going to get into all that, Mr. Palughi. That’s a separate matter. That doesn’t have any bearing on this lawsuit. Go ahead. “MR. PALUGHI: Well I want a chance to be heard on that and put it in the record, Judge.
“THE COURT: You can put it in the record right now. Your objection is overruled and your exception is noted. Go ahead.”
It is to be observed from the quoted portion of the transcript that defendant’s attorney was aiming his grievance chiefly in the direction of the witness Michael Cotton, the alleged purchaser from defendant of the marijuana in each case, and to the statements of the trial court in response to the statement of defendant’s counsel to the effect that Mr. Cotton was “very interested in pleasing the District Attorney’s Office,” as shown by Mr. Cotton’s activity in the proceeding for the condemnation of the motorized van. We agree with the trial court that such was “a separate matter” and that defendant’s counsel should not have been allowed to show, or comment upon the matter, in his opening statement to the jury.
The transcript of the proceedings discloses that the action of the trial court complained of by appellant transpired during the opening statement to the jury by counsel for defendant promptly after the jury had been selected and just before the hearing, out of the presence of the jury, of defendant’s motion to suppress evidence as to what was found in the search of the residence of defendant and his mother and the search of the motorized van. Even though three certainly, and possibly four, criminal cases against this appellant were consolidated for trial by consent of the parties, whatever action there was as to the condemnation of the van was omitted from the consolidation. Perhaps a mistake *130 was made by the parties in agreeing to the consolidation of the two cases for the separate sales of marijuana with any other case against the defendant, but the consolidation furnished no basis for evidence that was incompetent, irrelevant and immaterial to any of the cases consolidated for trial. It was within the province and duty of the court to so regulate the trial thereof as to circumscribe, within the bounds of reasonableness, statements and arguments of counsel, as well as the evidence, so as to prevent an unnecessary consumption of time and a resulting hindrance, rather than assistance, to the administration of justice. As stated in Powell v. Powell, 285 Ala. 230, 234, 231 So.2d 103, 106 (1970), in an opinion by Justice Harwood:
“... The undue and unnecessary consumption of time in the trial of causes, and the avoidance of multiplied and irrelevant issues is committed in the first instance to the wise discretion of the trial judge [followed by citations of jury and nonjury trials of criminal, civil and equity cases].”
The trial court was not in error in its ruling that is made a basis for appellant's fourth and final contention for a reversal.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.

. Spelled "Cotton” throughout the transcript and elsewhere in this opinion.

. That four cases against defendant-appellant were consolidated for trial is indicated also in other parts of the record before us, but what happened to the fourth case is not clearly shown.