Michael Butler was indicted on four separate cases of robbery, first degree. These cases were consolidated for trial. On April 9, 1984, Butler filed a motion to suppress statements he made to officers of the Montgomery Police Department. A suppression hearing was held in Montgomery Circuit Court on June 5, 1984. The motion was denied on June 11, 1984. On June 13, 1984, Butler filed an amendment to his motion to suppress, alleging that his statements given to officers of the Montgomery Police Department were obtained as the product of an illegal arrest not based on probable cause. Butler, also on that date, filed a motion to re-consider the order denying his motion to suppress.
On July 2, 1984, a hearing was held on Butler's amended motion. On July 9, 1984, Butler's motion to suppress was granted. Pursuant to A.R.Crim.P.Temp 17, the State appealed from the pre-trial order suppressing Butler's confession as a product of an illegal arrest. Investigators Smith and Perdue of the Montgomery Police Department testified at the suppression hearing that a number of robberies had occurred in the Montgomery area involving a small black male wearing a ski mask and armed with a small caliber revolver. Officer Mason of the Millbrook Police Department testified that he received a telephone call on January 22, 1984, from a person identified as Lanette Singleton. This informant stated that she had overheard someone say that he had heard Lacy Butler and Michael Butler had committed a robbery. She stated that Lacy and Michael had bought a red Chevrolet Monte Carlo and were going to leave town for North Carolina. Lanette Singleton was not a police informant. This information was passed along to an Officer Owens, also with the Millbrook police.
Officer Owens admitted that neither he nor any other officer went out and talked with Lanette Singleton, or the individual that had actually overheard the conversation. He was never able to corroborate the statement that was passed along to him. Owens shared this information with the Montgomery and the Prattville Police Departments.
Officer Allen, of the Prattville Police Department, testified that on February 6, 1984, he received information that a robbery had occurred in Montgomery. He also received information that Michael Butler and Lacy Butler were suspects. Allen testified that he stopped a red Pontiac Grand Prix travelling in excess of the speed limit between Prattville and Montgomery on U.S. Highway 31. Butler was driving the car and when Allen asked for his identification, he could not produce any. Butler told Allen his name was Lane Fedderson. Butler was charged with driving without a license and giving false identification. Allen then turned Butler over to Montgomery Police. Butler was not charged with any of the robberies at that time.
Investigator Smith testified that Michael Butler was considered a suspect based on his physical description and the information from Lanette Singleton in Millbrook. Smith admitted that he had never talked with Lanette Singleton to verify the information that had been passed along to him.
Butler was arrested on a capias warrant on February 20, 1984, due to his failure to pay court costs on an unrelated misdemeanor offense. Butler was released from the Montgomery County jail on February 21, 1984. At 4:15 p.m., after he was completely released from custody, Investigators Smith and Perdue approached Butler at the jail desk and told him that they "needed to question him regarding some robberies that had occurred" in the Montgomery area. Smith testified that Butler said, "Sure, or okay, something to that effect." Butler was handcuffed before being placed in the police car. In the car, Butler was read his Miranda rights and was only told that the conversation would wait until they got downtown.
Butler remained handcuffed once they reached headquarters and until he was taken upstairs to the Investigative Division, at which time the handcuffs were removed *Page 925 
and the investigators began questioning him.
Smith and Perdue both testified that Butler was not under arrest at this time. They again read Butler his Miranda rights at 4:30 before the questioning began. The interrogation in Room 210 continued until after 11:00 p.m., for some six and a half hours. Butler repeatedly said that he had no knowledge or information concerning any of the robberies. Butler was again advised of his rights and finally he confessed at 11:07 p.m. to the robbery on February 6, 1984, after being told by the investigators that none of his alibis checked out. Perdue testified that, when Butler confessed, he was then placed under arrest and removed to the city jail.
On February 24, 1984, Investigator Barnes of the Montgomery Police Department, checked Butler out of the jail to question him further concerning three other robberies. After being advised of his rights, Butler confessed to these robberies too.
In the appeal from the Montgomery Circuit Court's order suppressing Butler's confession, the District Attorney submits that Butler voluntarily accompanied the investigators from the county jail and was free to leave at any time. Butler's handcuffing was "standard police policy," and a mere procedural requirement for "any individual riding in a police vehicle."
An arrest is complete when one's liberty of movement has been restricted. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168,4 L.Ed.2d 134 (1959). An arrest:
 "consists in taking, under real or assumed authority, custody of another person for purposes of holding or detaining him to answer a criminal charge or civil demand."
Glass v. State, 424 So.2d 687, 689 (Ala.Cr.App. 1982). An actual arrest is accomplished when an individual's "freedom of movement" is curtailed. Foy v. State, 387 So.2d 321, 324
(Ala.Cr.App. 1980); Sibron v. New York, 392 U.S. 40,88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
The District Attorney mistakenly relies upon United States v.Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497
(1980), for the assertion that the case at bar is an example of a person voluntarily accompanying a law enforcement officer to another location for questioning, not an arrest. The present facts are clearly distinguishable from those in Mendenhall, supra. Justice Powell, writing for the plurality on this specific point stated:
 "Unlike the petitioner in Terry, [v. Ohio, 392 U.S. 1] at 7 [88 S.Ct. 1868, 20 L.Ed.2d 889], the respondent was not physically restrained. The agents did not display weapons. The questioning was brief. In these circumstances, the respondent could not reasonably have felt frightened or isolated from assistance."
Mendenhall, supra, at 563, 100 S.Ct. at 1882. Justice Powell also noted that the question whether respondent could have thought she was free to "walk away" when approached by the two government agents in the airport was "extremely close." Id., at 561, 100 S.Ct. at 1880.
In this case, Michael Butler was approached by the two police officers while he was still inside the county jail, at the front desk. The officers told him that they "needed to talk with him about some robberies." They took him outside, handcuffed him, and placed him in the back of a police vehicle. When Butler inquired about the particulars, the officers read him his Miranda rights and told him they would handle it when they got downtown. Still handcuffed, Butler was taken out of the vehicle and led upstairs to a second floor room. Butler was questioned for almost six and a half hours in that room with the door closed.
It is readily apparent that any person in Butler's shoes would have reasonably believed that he had been arrested. His "freedom of movement" had been effectively curtailed when he was handcuffed and taken to police headquarters. Glass, supra, at 690.
The officers' testimony that they did not arrest Butler until after he had *Page 926 
confessed is "not determinative of whether or not he was actually arrested." McCants v. State, 459 So.2d 992
(Ala.Cr.App. 1984); Berkemer v. McCarty, ___ U.S. ___,104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The issue of whether an arrest occurred is not based on the police officer's "unarticulated plan," but rather "how a reasonable man in the suspect's position would have understood his situation."Berkemer, supra, 104 S.Ct. at 3152; McCants, supra.
The District Attorney's contention that there was no arrest of Michael Butler is not substantiated by the facts of this case. Having determined that there was an arrest, we must now determine whether there was probable cause to effectuate that arrest.
The District Attorney asserts that the information Officer Mason received from Lanette Singleton was sufficient to give the Montgomery Police probable cause to arrest Michael Butler. Lanette Singleton's statement, that she had heard from someone else that he heard another party talking about a robbery that Michael Butler was supposed to have committed, was at least triple hearsay when it reached the Millbrook Police. The record shows that this statement was never verified by any police officer and no conversation took place with Lanette Singleton beyond the initial telephone conversation with the police dispatcher. The record indicates that Michael Butler was not a suspect in any of the robberies in the Montgomery area until the Millbrook Police received the telephone call from Lanette Singleton.
Two recent cases with almost identical facts, Taylor v.Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), and Ex parte Meeks, 434 So.2d 844 (Ala. 1983), present striking illustrations to consider. In Taylor, following a number of robberies in the Montgomery area, an inmate incarcerated on an unrelated charge told a police officer that Omar Taylor was involved in one of the robberies. The informant had never given information to police previously and did not provide any details of the robbery or his basis of knowledge.
Omar Taylor was picked up by police, advised of his rights and questioned in connection with the robbery investigation. After six hours of interrogation, Omar Taylor confessed. The United States Supreme Court held that the informant's tip was insufficient to give police probable cause to obtain a warrant or arrest Omar Taylor. His confession was tainted following his illegal arrest. Taylor, supra, at 691.
In Meeks, supra, the police received information from an informant that led to the arrest and subsequent conviction of James Meeks for the robbery of two Montgomery stores. There was no evidence presented to show the police officer had reason to believe the informant was a credible person or that the information was reliable. Meeks, supra, at 846. The Alabama Supreme Court reversed the conviction, saying that the State failed to show probable cause for the arrest of James Meeks.
Probable cause exists where the facts and circumstances within an officer's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. Berger v. New York,388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967); Brinegarv. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310,93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 162,45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).
To make a determination as to whether probable cause existed to arrest Butler, we must examine the recent decision inIllinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527
(1983), and gauge its effect upon probable cause analysis. The point most crucial to the determination of our present question was dealt with by Justice Rehnquist's majority opinion stating that the assertions in an anonymous letter became "far less significant after [police officer] Mader's independentinvestigative work occurred. The corroboration of the letter's predictions . . . all indicated, albeit not with certainty, that the informant's other *Page 927 
assertions also were true." (Emphasis added.) Gates, supra, 462 U.S. at ___, 103 S.Ct. at 2335, 76 L.Ed.2d at 552.
"[T]he anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Gates, 462 U.S. at ___,103 S.Ct. at 2335, 76 L.Ed.2d at 552. Justice Rehnquist detailed that there was a fair probability that the informant got his information from his observation of Gates "[a]nd corroborationof major portions of the letter's predictions provides just this probability." (Emphasis added.) Gates, supra, 462 U.S. at ___, 103 S.Ct. at 2336, 76 L.Ed.2d at 553.
Clearly, Gates is factually distinguished from the case at bar. The police conducted no "independent investigative work" and made no verification of Lanette Singleton's information. This point is crucial, as is reflected by numerous decisions citing Gates, where there was corroboration of an informant's tip by police investigation. See United States v. Porter,738 F.2d 622 (4th Cir. 1984); United States v. Silva, 745 F.2d 840
(4th Cir. 1984); United States v. Pajari, 715 F.2d 1378 (8th Cir. 1983); United States v. Tocco, 581 F. Supp. 384 (N.D.Ill. 1984).
The importance of corroboration of an informant's tip was stressed by Justice Rehnquist:
 "Our decisions applying the totality of circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work. In Jones v. United States, supra, 362 U.S. [362 U.S. 257] at 269 [80 S.Ct. at 735, 4 L.Ed.2d 697], we held that an affidavit relying on hearsay `is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.' We went on to say that even in making a warrantless arrest an officer `may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'"
(Emphasis added.)
Gates, supra, 462 U.S. at ___, 103 S.Ct. at 2334,76 L.Ed.2d at 550. It should be noted that in Jones v. United States,362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the tip was based on an informant's personal knowledge and was corroborated by other sources. See also United States v. Shipp, 578 F. Supp. 980
(S.D.N.Y. 1984). This is further established in United Statesv. Griffin, 572 F. Supp. 126 (D.D.C. 1983), which held that where an officer relied upon second-hand information from an informant there would be no probable cause, "under the tests laid out in Aguilar v. Texas, 378 U.S. 108 [84 S.Ct. 1509,12 L.Ed.2d 723] . . . and Spinelli v. United States, 393 U.S. 410
[89 S.Ct. 584, 21 L.Ed.2d 637] . . ., even as those decisions are modified by Illinois v. Gates." Griffin, supra at 128. InGriffin, there was sufficient probable cause in the end, because the police corroborated the tip through independent investigation.
It is important to properly characterize Lanette Singleton's tip. There is no evidence that she had ever provided information to police in the past and it is obvious that her statement was not based on personal observation. She is clearly distinguishable from an informant who was a crime victim or crime witness who is considered a "reliable informant even though his reliability has not theretofore been proved or tested." W. LaFave, 1 Search and Seizure § 3.4 (1978). She would also not properly be characterized an "anonymous informant." Lanette Singleton is also distinguished from the type of "citizen-informant" whose "basis of knowledge" presents no major problem. Crawley v. State, 440 So.2d 1148, 1149
(Ala.Cr.App. 1983). The present situation is one where police acted on a tip that they knew was based on hearsay and not personal observation, yet did not verify this information nor corroborate it before picking up Michael Butler at the Montgomery County Jail. *Page 928 
The veracity of an informant is still "highly relevant in determining the value of the informant's report" and can provide sufficient probable cause "even if the informant's reliability is unknown," if the information is corroborated by the police. United States v. Porter, 738 F.2d 622, 625 (4th Cir. 1984), citing Illinois v. Gates, supra. In the present case, this necessary corroboration is non-existent.
The "totality of the circumstances" test set forth in Gates
does not redeem the police officer's failure to corroborate:
 "Gates adopts a `totality of the circumstances' approach for determining whether an informant's tip established probable cause, and holds that in some circumstances substantial corroboration of the tip through independent police investigation can justify reliance on the tip even if the basis of the informant's knowledge is not set forth." (Emphasis added)
English v. Sava, 571 F. Supp. 1029 (S.D.N.Y. 1983). See alsoUnited States v. Cortese, 568 F. Supp. 119 (M.D.Pa. 1983);United States v. Wilson, 571 F. Supp. 1422 (S.D.N.Y. 1983);United States v. Uroquiza, 575 F. Supp. 1538 (S.D.N.Y. 1983). InUnited States v. Bronowski, 575 F. Supp. 668 (W.D.Pa. 1983), the relevance is explained:
 "In Gates, the Supreme Court acknowledged the probative value of corroboration of details of an informant's tip by independent police work in applying the totality of the circumstances analysis."
575 F. Supp., at 672.
This analysis of the application of Gates and the "totality of the circumstances test" is consistent with this court's decision in Mims v. State, 442 So.2d 133, 135 (Ala.Cr.App. 1983), where there was sufficient probable cause because there was evidence that the informant was reliable or credible and also had a sufficient basis of knowledge of the information. Further, a hearsay tip from an unidentified source was found insufficient to establish probable cause in Sawyer v. State,456 So.2d 114 (Ala.Cr.App. 1984), under the "totality of the circumstances test" outlined in Gates. The facts of the case at bar are distinguishable from Houk v. State, 455 So.2d 115, 118
(Ala.Cr.App. 1984), where a reliable informant provided highly detailed information in his tip to police. The personal observation of a reliable informant (a reserve police officer) met the "totality of the circumstances test" for probable cause in Archie v. State, 455 So.2d 122, 126 (Ala.Cr.App. 1984). This specificity and assured reliability was not present in the case of Lanette Singleton.
Based on a thorough examination of the above authorities and the record, we must disagree with the District Attorney's argument that the information provided in the tip was corroborated by other facts and circumstances known to the officers. There is no showing that there were other facts known to the police that would corroborate the hearsay relayed to the police. Even under the "totality of the circumstances test," the warrantless arrest of Michael Butler was made without probable cause. The arrest was, therefore, illegal.
As in Taylor v. Alabama, supra and Ex parte Meeks, supra, the confessions obtained through custodial interrogation after an illegal arrest should be excluded. The Montgomery Circuit Court acted properly in granting Butler's motion to suppress his confessions.
This cause is due to be, and is, hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 929